IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JUAN MARTINEZ, and ANTONIO GUZMAN, on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | 4:09CV3079 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| CARGILL MEAT SOLUTIONS, Corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

The plaintiffs' complaint alleges a claim for unpaid wages and injunctive relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. The plaintiffs allege defendant Cargill Meat Solutions, Corporation ("Cargill") has violated and continues to violate the FLSA by requiring non-exempt employees at Cargill's facility at Schuyler, Nebraska to work substantial amounts of time "off-the-clock" and without pay, and by failing to provide them with the meal and rest periods to which they are entitled by law. Filing No. 1, ¶ 1.

The plaintiffs have moved for conditional certification of a collective action under 29 U.S.C. § 216(b), and an order approving their proposed: 1) method of notifying potential plaintiffs by mailing, posting, and radio notice of this lawsuit; 2) schedule for distribution and receipt of opt-in notices, and 3) Opt-In Consent Forms. Filing No. 19.   As discussed below, this memorandum and order conditionally certifies a collective action but narrows the plaintiffs' definition of the class; removes Antonio Guzman as a named plaintiff; modifies the content of the plaintiffs' proposed notice; sets procedures for accumulating the list of proposed class members and delivery of the notice; sets the deadline for opting into this litigation; instructs counsel on how to clarify previously filed opt-in consents, and file future consents; and instructs the clerk's office on how to assist the court in managing this action.

FACTUAL FINDINGS

The plaintiffs seek to represent and provide notice to a putative class defined to include:

> All current and former non-exempt hourly employees who have been employed at any time by Defendant at its Schuyler, NE facility during the time period April 20, 2006 to the present, and who use personal protective equipment.

Filing No. 19, at CM/ECF p. 1.

In support of their motion for conditional certification, named plaintiffs Juan Martinez ("Martinez") and Antonio Guzman ("Guzman") submitted Spanish and English versions of declarations signed by Martinez, Dilcia Ardon, and Jesus Tapia Reyes, and three proposed notice forms (for mail, workplace posting, and radio) for notifying putative class members of the right to join this lawsuit.[1]  Cargill has submitted the declarations of Sarah Heller-Glen, with the attached collective bargaining agreement relevant to this lawsuit, Jean Olsufka, Bill Fleming, Brett Walters, and Rod Perrin.  The court has also reviewed the plaintiffs' complaint and the defendant's answer.  The evidence and allegations relevant to the issues currently before the court can be summarized as follows:

---

[1]The plaintiffs' index of evidence, (filing no. 21), states the plaintiffs submitted a declaration from Guzman.  The court contacted plaintiffs' counsel to determine if Guzman's declaration was missing from the court record due to an oversight.  Plaintiffs' counsel stated Guzman never completed and signed a declaration for filing, and confirmed that to the extent filing no. 21 indicates such a declaration was filed, the plaintiffs' index of evidence is incorrect.

-2-

Cargill's facility at Schuyler, Nebraska, (the "Plant"), is a meat-packing plant that slaughters cattle and processes and sells beef products to retailers and distributors. Filing No. 29-2, Ex. 1 (Heller-Glen declaration), ¶ 3, at CM/ECF p. 2.

As of April 2009, the Plant's breakdown of non-exempt employees was as follows:

1,770 hourly workers, including:

- 597 in the Slaughter Division (46 departments), with 131 of these employed in the following non-processing line departments:
  Yards (18 employees);
  **Rendering (28 employees);
  Coolers (31 employees);
  **Maintenance (38 employees);
  Trainers (3 employees); and
  Quality Control (13 employees).

- 1,173 in the Fabrication Division (51 departments), with 232 of these employed in the following non-processing line departments:
  **Maintenance (39 employees);
  Trainers (9 employees);
  Box Makeup and Storage (88 employees);
  Quality Control (42 employees); and
  **Load Out (54 employees).

Filing No. 29-2, Ex. 1 (Heller-Glen declaration), ¶ 4, at CM/ECF pp. 2-3. See also, Filing No. 29-2, Ex. 1 (Heller-Glen declaration, Ex. A ("CBA")), § 4.03, at CM/ECF p. 10. Except as to those departments prefaced with "**" above, for which there are three daily shifts, the Slaughter and Fabrication Divisions operate two shifts ("A" and "B") per day. Filing No. 29-2, Ex. 1 (Heller-Glen declaration), ¶¶ 4-5, at CM/ECF p. 3.

Approximately 21% of the Plant's production and maintenance employees, including those who do not work on the processing line within the Slaughter and Fabrication Divisions, (e.g., the Training, Maintenance, Shipping and Receiving, Load Out, Box Making and Storage, Rendering, Waste Water, Quality Control/Tech Services, and Yards and Pens departments), and those working in outlying areas, are paid on an individualized basis by punching a time clock.   Filing No. 29-2, Ex. 1 (Heller-Glen declaration), ¶¶ 11-12, at CM/ECF pp. 4-5.

Of the 21% of Cargill non-exempt employees who are paid on a time clock system:

--     Training department employees  (12 hourly) are not required to don or doff protective clothing or equipment before or after their shift; Filing No. 29-2, Ex. 2 (Olsufka declaration), ¶¶ 2-4, at CM/ECF p. 44.

--     Shipping department employees (90 hourly) wear only a hard hat and earplugs, which they can take home if they choose. They can also choose to wear coveralls supplied by Cargill, but they do not doff or don the coveralls during meal periods, and they can choose to buy and wear steel-toes boots, which they can take home.  They neither wear nor use any other personal protective clothing or equipment. Filing No. 29-2, Ex. 4 (Walters declaration), ¶¶ 3-5, at CM/ECF pp. 50-51.

--     Maintenance department employees (85 hourly) do not regularly use knives, hooks, or cutting instruments and are not required to put on any steel mesh safety clothing at the beginning of their shift.  They wear coveralls supplied by Cargill, which they do not doff or don during meal periods, and steel-toed boots, which they purchase and can take home if they choose.  Filing No. 29-2, Ex. 3 (Fleming declaration), ¶¶ 2-4, at CM/ECF pp. 47-48.

--     Rendering department employees, other than tissue rendering non-operators, are paid for their meal period pursuant to CBA § 9.03.1, which states:

-4-

Inedible and edible rendering and boiler operators required to work a continuous operation shall be paid for meal periods.

Rendering department employees can choose to wear coveralls supplied by Cargill, which are not doffed or donned for the meal period, and steel-toed boots, which they purchase and can take home if they choose. Filing No. 29-2, Ex. 1 (Heller-Glen declaration), ¶ 14 & Ex. A ("CBA")), § 9.03.1, at CM/ECF pp. 5, 18-19; ex. 5 (Perrin declaration), ¶¶ 3-5, at CM/ECF pp. 53-54.

--   Waste Water, Quality Control/Tech Services, and Yards and Pens department employees do not use knives, hooks or cutting instruments, and they are not required to wear any steel mesh safety clothing. Filing No. 29-2, Ex. 1 (Heller-Glen declaration), ¶¶ 12-13, at CM/ECF p. 5.

The remaining 79% of Cargill's non-exempt employees work in processing lines within the Slaughter and Fabrication Divisions, and are compensated in accordance with the "gang time" terms of the Collective Bargaining Agreement ("CBA") between Cargill and United Food and Commercial Workers CLC Local #22, AFL-CIO ("UFCW"). Filing No. 29-2, Ex. 1 (Heller-Glen declaration), ¶¶ 6-8, at CM/ECF pp. 3-4. "Gang time" measures, for each shift, the amount of time from when the first animal crosses a specified point at the beginning of the production line to when the last animal crosses the same specified point at the beginning of the production line. Filing No. 29-2, Ex. 1 (Heller-Glen declaration), ¶ 9, at CM/ECF p. 4. Section 5.02 of the CBA states:

Gang time for the kill floor will be figured on the work schedule assigned to the automatic switch. Gang time for the fabrication will be figured on the work assigned to the fabrication scale. Time will be computed from the time employees on these positions commence their work until the time work is stopped at these positions. An employee working gang time shall be compensated to the minute. The Company will install and maintain a clock at the positions where gang time is

computed to accurately determine gang time.  An employee working in
excess of the gang time will be compensated for such time.

Filing No. 29-2, Ex. 1 (Heller-Glen declaration, Ex. A ("CBA")), § 5.02, at CM/ECF
p. 13.

Of the Cargill non-exempt employees paid by the "gang time" method
(approximately 79% of all non-exempt employees):

--      Approximately 5% are paid additional wages for varying amounts of
        time needed to perform extra duties, such as setup tasks and shutdown
        cleaning, as assigned by a supervisor. Filing No. 29-2, Ex. 1 (Heller-
        Glen declaration), ¶ 10, at CM/ECF p. 4.

--      Approximately 40-45% do not use a knife, hook, or cutting instrument,
        and are generally required to wear only a hard hat, hair net, ear plugs,
        steel-toed boots, and safety glasses, all of which they can and often do
        take home.  Filing No. 29-2, Ex. 1 (Heller-Glen declaration), ¶ 17, at
        CM/ECF p. 6.

--      Approximately 55-60% are assigned to jobs that require using a knife,
        hook, or other cutting instrument, and therefore these employees wear
        special protective or safety-related clothing which may include any
        combination of the following: a mesh apron, mesh sleeves, plastic arm
        guards, mesh gloves, rubber gloves, polar sleeves, a chain belt, a
        scabbard, or shin guards.  Those who wear safety clothing and
        equipment to perform their job duties receive a supplemental daily
        payment, ranging from 3-5 minutes, as provided for under CBA § 6.08,
        which states:

                The parties agree that the time employees spend changing
                clothes, including the donning and doffing of safety
                clothing and equipment worn in their jobs, and the
                time they spend washing up before and after paid production
                work, shall be excluded from the employees' paid
                workdays.  The parties agree, however, that employees
                who are required to wear safety clothing and equipment as

-6-

> defined in the agreement between Cargill Meat Solutions
> and United Food and Commercial Workers Local 22 shall
> be paid for an amount of time as determined by joint time
> studies beyond paid production work to compensate them
> for the time they spend outside of paid production work
> cleaning their safety clothing and equipment.

Filing No. 29-2, Ex. 1 (Heller-Glen declaration), ¶ 15 & Ex. A ("CBA")), § 6.08, at CM/ECF p. 5, 18-19; and

Named plaintiff Martinez, a union employee who worked the B shift in the Chuck Trim department of the Fabrication division, was paid on the gang time method. He used knives, knife sharpeners, and a hook for meat, and was therefore required to wear both a plastic and metal apron, a plastic arm guard and polar arm sleeves, gloves, boots, a helmet, a hair net, ear plugs, a belt for the knives, a scabbard, a frock, and a warm coat. This protective equipment was donned at the start of his shift, doffed at the end of the shift, and doffed and donned for meal times. He was required to clean and disinfect his knives and metal protective equipment at the beginning of his shift, and his safety equipment at the end of each shift. Martinez alleges the time required for these donning, doffing, and cleaning tasks totaled about an hour and fifteen minutes a day. Martinez was employed at the Plant from May 12, 2003 until July 31, 2007, when his employment was terminated for failing to report for work. Filing No. 21-2 (Martinez declaration), at CM/ECF pp. 6-8; 29-2, Ex. 1 (Heller-Glen declaration), ¶ 19, at CM/ECF p. 6.

Named plaintiff Guzman was a union employee who worked in the Evisceration department and was paid on the gang time method. Guzman was employed at the Plant from March 31, 1999 until November 10, 2008, when his employment was terminated for failing to report for work. Filing No. 29-2, Ex. 1 (Heller-Glen declaration), ¶ 20, at CM/ECF p. 6. The evidentiary record contains no further information on Guzman, and the complaint contains no information specific to Guzman. See filing no. 1.

Dilcia Ardon, who is not a named plaintiff, is a union employee who has worked for the Plant since April 21, 1999.  She works the A shift on the processing line kill floor, within the Skinning Line 2 department of the Slaughter division, and is paid on the gang time method.   Ardon uses 6 knives, a meat hook, and 2 sharpeners, and is required to wear gloves, boots, a helmet, a hair net, ear plugs, a metal apron, a  plastic apron, a hard plastic arm guard, and a knife belt and sheath. She claims she spends approximately 41 minutes per work day on donning, doffing, and cleaning tasks.  Filing No. 21-3 (Ardon declaration), at CM/ECF pp. 6-7; 29-2, Ex. 1 (Heller-Glen declaration), ¶ 21, at CM/ECF p. 7.

Jesus Tapia Reyes, who is not a named plaintiff, was a union employee who worked the B shift on the processing line kill floor in the Red Offal department of the Slaughter Division.  He was required to wear plastic gloves, boots, a helmet, a hair net, ear plugs, and a plastic apron.  Reyes was paid on the gang time method and claims the required tasks of donning, doffing, and cleaning his equipment took approximately 31 minutes per day to perform.  Reyes worked at the Plant from September 19, 1999 until August 18, 2008.  Filing No. 21-4 (Reyes declaration), at CM/ECF pp. 5-6; 29-2, Ex. 1 (Heller-Glen declaration), ¶ 22, at CM/ECF p. 7.

## LEGAL ANALYSIS

The named plaintiffs seek conditional certification pursuant to 29 U.S.C. § 216(b).  Filing No. 19, at CM/ECF p. 1.  Section 216(b) provides:

> An action to recovery the liability prescribed [under the FLSA] may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the  court in which such action is brought.

29 U.S.C. § 216(b).

Unlike Rule 23 of the Federal Rules of Civil Procedure, which requires class members to either "opt out" of the class action lawsuit or be bound by the outcome, a class member under § 216(b) must "opt in" to be bound.

> There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b). In a Rule 23 proceeding a class is described; if the action is maintainable as a class action, each person within the description is considered to be a class member and, as such, is bound by judgment, whether favorable or unfavorable, unless he has "opted out" of the suit. Under § 16(b) of FLSA, on the other hand, no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively "opted into" the class; that is, given his written, filed consent.

Schmidt v. Fuller Brush Co., 527 F.2d 532, 536 (8th Cir. 1975).  Since employees must opt into a class seeking FLSA recovery, FLSA class action proceedings are often called collective actions.

The FLSA collective-action mechanism is a two-step process.  Morales v. Greater Omaha Packing Co., Inc.,  2009 WL 1650016, 3 (D. Neb. June 9, 2009) (Bataillon, J., presiding, adopting the report and recommendation of Thalken, M.J.); Lopez v. Tyson Foods, Inc., No. 8:06-cv-459, 2008 WL 3485289, *7-8  (D. Neb. Aug. 7, 2008)(Bataillon, J., presiding).  The first step allows employees to obtain "conditional certification" of a collective action by showing the court that the plaintiffs and those they seek to represent are "similarly situated."  Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001).  See also, Bouaphakeo v. Tyson Foods, Inc., 564 F. Supp. 2d 870, 891 (N.D. Iowa 2008); Young v. Cerner Corp., 503 F. Supp. 2d 1226, 1229 (W.D. Mo. 2007).  Based on a limited record, the court must initially determine whether there are "other employees of the defendant-employer who desire to "opt-in' and are 'similarly situated' [to the named plaintiff] with respect to their job requirements and with regard to their pay

provisions." Dybach v. State of Fla. Dept. of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991).  See also, Dietrich v. Liberty Square, L.L.C., 230 F.R.D. 574, 577 (N.D. Iowa 2005).

Although the standard for satisfying this first step is lenient, "plaintiffs must present more than mere allegations; i.e., some evidence to support the allegations is required." Young, 503 F. Supp. 2d at 1229. See also, Bouaphakeo, 564 F. Supp. 2d at 891; Salazar v. Agriprocessors, Inc., 2008 WL 782803, 6 (N.D. Iowa Mar. 17, 2008).  The burden is on the plaintiffs to demonstrate they and the potential opt-in plaintiffs were together victims of a single unlawful decision, policy, or plan. Young, 503 F. Supp. 2d at 1229.  "[S]ome identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." West v. Border Foods, Inc., 2006 WL 1892527, 3 (D. Minn. July 10, 2006) (quoting Barron v. Henry County School System, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003).  If a trial would require "individualized determinations to resolve the claims of each plaintiff, certification as a collective action may be inappropriate." Purdham v. Fairfax County Public Schools, 629 F. Supp. 2d 544, 551 (E.D. Va. 2009).

The plaintiffs' complaint alleges that although "[p]laintiffs and the members of the collective action are members of a union which has signed a collective bargaining agreement ("CBA") with Cargill, the CBA does not relieve Cargill of the obligation to pay for all of the "off-the-clock" time described herein."   Filing No. 1, ¶ 3.  The plaintiffs seek authority to pursue claims on behalf a class that includes:

> All current and former non-exempt hourly employees who have been employed at any time by Defendant at its Schuyler, NE facility during the time period April 20, 2006 to the present, and who use personal protective equipment.

Filing No. 19, at CM/ECF p. 1.

-10-

<u>The Parties</u>

A.     Class Representatives.

"[A] class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members. <u>East Texas Motor Freight System Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)</u>.  A named party is not a proper representative of the class as to those claims for which he himself lacks standing. <u>Hall v. Lhaco, Inc., 140 F.3d 1190, 1196 (8th Cir. 1998)</u>.  As to named plaintiff Guzman, there is no evidence he has standing to pursue a claim for wages under the FLSA.  Specifically, the record indicates Guzman was paid "gang time," but there is nothing of record indicating he was required to doff and don protective equipment, and/or clean and sanitize work equipment and tools, and nothing to indicate he claims the time spent performing these tasks exceeded the amount for which he was paid.

On the record before the court, Martinez can remain a named plaintiff; Guzman cannot be a named plaintiff because there is no showing he suffered the same injury as the members of the class he intends to represent.[2]

B.     The Union.

The court asked the parties to brief whether the Union must be joined in this suit.  The cases submitted by the parties establish the Union lacks standing to sue for FSLA recovery, (<u>United Food & Commercial Workers Union, Local 1564 v. Albertson's, Inc., 207 F.3d 1193 (10th Cir. 2000)</u> (holding the union lacked standing

---

[2]Neither Martinez nor Guzman have standing to seek injunctive relief.  "Courts are in agreement that under [the FLSA,] an employee's action can be maintained only to recover back wages and liquidated damages and not to obtain injunctive relief against future violations; only the Secretary is vested with the authority to seek an injunction." <u>Barrentine v. Arkansas-Best Freight System, Inc., 750 F.2d 47, 51 (8th Cir. 1984)</u>.  In addition, Martinez and Guzman are not currently employed by Cargill.

to seek injunctive relief or damages on behalf of its members under the FLSA), and the union is not a proper defendant for FLSA purposes. Smith v. BNSF Ry. Co. 2008 WL 4002513, 2 (D. Kan. Aug. 26, 2008) ("[T]he FLSA only provides for remedies against an employer, not a union.").

The Union was served with a copy of the complaint, but it has not moved to intervene as an interested party. Unless and until the Union claims an interest in the outcome of this case and moves to intervene, it will not be a party to this action. If such a motion is filed, the court will consider the merits at that time. Scott v. City of New York, 340 F. Supp. 2d 371 (S.D.N.Y. 2004) (holding joinder of unions as necessary, non-aligned parties in Fair Labor Standards Act (FLSA) actions was inappropriate where only monetary relief was at issue and the union claimed no legal interest in the litigation).

<u>The Proposed Collective Class Definition</u>

The named plaintiffs are union members and are paid on a "gang time" system. The fundamental question raised in their complaint is whether the gang time method of compensation as set forth in the CBA violates the FLSA by failing to pay for the actual time spent performing the integral and indispensable requirements of their jobs. The named plaintiffs are not similarly situated to Cargill's non-union employees; they are not similarly situated to the approximately 21 % of defendant's hourly employees paid on a time-clock.

The defendant claims even those paid by the gang time method cannot be conditionally certified as a class because they are not similarly situated. Specifically, the defense explains gang time employees work varying jobs and, as a result, wear varying types of protective equipment and have different responsibilities for cleaning and sanitizing their protective equipment and work tools.

-12-

Donning and doffing gear that is "integral and indispensable" to the employees' work is a "principal activity" under the FLSA, and the continuous workday rule mandates the time spent performing these tasks and walking or waiting to perform them is covered by the FLSA. IBP, Inc. v. Alvarez, 546 U.S. 21, 40 (2005) (holding employees of a meat processing plant could bring an FLSA collective action to recover for the time it took to change into required specialized protective clothing and safety gear, including the time required for walking and waiting); Lopez, 2007 WL 1291101, at *3) (Bataillon, J., presiding). See also, Reich v. Monfort, 144 F.3d 1329 (10th Cir. 1998) (the preliminary time spent donning safety and sanitary clothing before and after shifts was compensable, not *de minimis*); Perez v. Mountaire Farms, Inc., 610 F. Supp. 2d 499 (D.Md. 2009) (holding donning/doffing of personal protective equipment required for performing jobs in a poultry processing plant were integral and indispensable to employees' principal activities and thus compensable under FLSA); Jordan v. IBP, Inc., 542 F. Supp. 2d 790 (M.D. Tenn. 2008) (the donning and doffing of frocks was compensable where it included the collecting, sanitizing, and stowing of gear, as well as walking and waiting to complete these tasks).

However, some courts have held the donning and doffing of general protective gear, such as a helmet, safety glasses, earplugs, and steel-toed boots, may be an "indispensable" part of the job, without being "integral" or compensable. See, Gorman v. Consolidated Edison Corp., 488 F.3d 586, 594 (2d Cir. 2007) (collecting cases and denying FLSA recovery for time spent donning a helmet, safety glasses, and steel-toed boots). See also, Reich v. IBP, Inc., 38 F.3d 1123 (10th Cir. 1994) (holding the time spent by knife-wielding workers at donning, doffing, cleaning and storing safety equipment was compensable work time, while the analogous time spent by nonknife-wielding employees who wore standard safety equipment such as safety glasses, a pair of ear plugs, and a hard hat was not compensable "work" under the FLSA). Many of these cases consider the time spent donning and doffing general safety equipment, such as a helmet and safety glasses, *de minimis* and non-

-13-

compensable under the FLSA. Moreover, to the extent an employee chooses, rather than is required, to wear clothing or footwear which may be considered safety equipment (e.g. steel-toed boots), or chooses to don and doff these items at work rather than home, the defendant claims the time spent is not an indispensable part of the employee's workday and is not compensable under the FLSA.

While disparity exists among Cargill's many departments and the tasks assigned to those paid on the gang time system, the gang time pay method is a common nexus sufficient to support conditional class certification at this stage of the case. "The differences among employees (i.e., types of equipment, amount of time spent) do not diminish this predominant relevant similarity." Morales, 2009 WL 1650016, at * 6. However, the plaintiffs' collective action definition must be narrowed, and will be re-defined to include:

> All current and former non-exempt hourly employees who have been employed at any time by Defendant at its Schuyler, NE facility during the time period April 20, 2006 to the present, who were compensated on a gang time system and wore or used personal protective equipment.

See, Morales, 2009 WL 1650016, at *6; Bouaphakeo, 564 F.Supp.2d at 899; Robinson, v. Tyson Foods, Inc., 254 F.R.D. 97, 102 (S.D. Iowa 2008).

The court anticipates that after engaging in discovery, the need to form subclasses may become apparent. For example, those wearing only general personal protective equipment, (e.g., a helmet, safety glasses, steel-toed boots, earplugs, a hair net, ect), may not have an FLSA claim or may have a substantially limited claim, and they may have interests dissimilar to those who wear or use specialized safety equipment while working for Cargill. When and if the evidence obtained during discovery supports formation of subclasses, the parties shall promptly raise these issues for the court's consideration.

-14-

Notice to Putative Class Members

The defendant objects to the plaintiffs' proposed notices and proposed methods for notifying potential class members. The FLSA requires that notice to potential plaintiffs be "accurate and timely," so that potential plaintiffs "can make informed decisions about whether to participate." District courts have the authority to manage the cases before them, and as part of that authority, the court supervises the notification process for "opt-in" collective actions. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989). Allowing district courts to approve the content and method of disseminating notice to potential class members ensures that the notices are timely, accurate, and informative; avoids later disputes over the form and content of unsupervised notices; serves the goal of avoiding duplicative suits; and facilitates expeditious disposition by entry of progression orders with "opt-in" deadlines. Hoffmann-La Roche, 493 U.S. at 172. However, while the court must set standards for the form and method of providing notice, it must scrupulously avoid endorsing or appearing to endorse the merits of the underlying claim. Hoffmann-La Roche II, 493 U.S. at 174.

Before the court addresses the defendant's objections to plaintiffs' proposed notice, the court notes that while placing the case name in the heading of the notice and consent form serves the role of differentiating between the two parallel lawsuits pending in this forum,[3] placing the court name in the heading is improper because it may be misconstrued as judicial support for the plaintiffs' litigation. Woods v. New York Life Ins. Co., 686 F.2d 578, 581 (7th Cir. 1982) (holding notice disseminated on the court's letterhead was improper because it implied judicial approval of the case); Jirak v. Abbott Laboratories, Inc., 566 F. Supp. 2d 845, 851 (N.D. Ill. 2008)

_____

[3]Haferland et al v. Cargill Meat Solutions Corp., 8:09-cv-00247, and Martinez v. Cargill Meat Solutions Corp., 4:09-cv-03079.

-15-

(holding a proposed notice with the court's name at the top of first page was inappropriate since it "could suggest to potential plaintiffs that the Court has lent its imprimatur to the merits of this case.").

The plaintiffs' proposed notice includes a statement advising recipients that the court expresses no opinion on the merits of the litigation, but this disclaimer is on the bottom of page 2. To avoid any appearance of endorsing the plaintiffs' claims, the disclaimer will be moved to the heading of the notice and placed directly after the case name. The heading will be modified as follows:

<u>**NOTICE OF COLLECTIVE ACTION LAWSUIT**</u>

*MARTINEZ, ET AL. v. CARGILL MEAT SOLUTIONS CORP.*

**This notice is for the sole purpose of determining the identity of those persons who wish to be involved in this case. Although the United Stated District Court for the District of Nebraska has authorized sending this notice, the court has not considered or made any decision as to the merits of plaintiffs' claims or defendant's defenses**.

In addition to the foregoing *sua sponte* change to the notice, the defendant advocates for further changes, claiming: 1) the plaintiffs' proposed notice is flawed because it fails to inform potential class members of Cargill's defenses, their potential liability for defense costs if Cargill prevails, and their right to separate representation; 2) the plaintiffs' proposed dissemination of notice by workplace posting, and radio and newspaper notice are unnecessary and inappropriate because notice by mailing will be sufficient; 3) a 120-day opt-in deadline is excessive; and 4) contrary to their demand, plaintiffs' counsel are not entitled to receive the putative class members' social security and telephone numbers. Each of these arguments will be addressed in turn.

A.      Content of the Notice.

1.      Notice of Cargill's defenses.

The current notice includes an extensive paragraph describing the plaintiffs' allegations which ends with the sentence, "Cargill has denied all allegations in this lawsuit."  The court has reviewed the answer, and the plaintiffs' description of the answer is not entirely accurate.  Moreover, the description of the case as it appears in the notice is skewed in favor of the plaintiff. The parties will be ordered to meet and confer to reach a consensus on neutral language to describe their respective positions.

2.      Notice of  Potential Liability for Defense Costs if Cargill Prevails.

Cargill argues the notice should contain a statement warning potential "opt-in" plaintiffs that they may be liable for the defendant's costs if Cargill wins. Cargill's request will be denied.  The courts have rejected Cargill's argument, noting it is not clear whether prevailing defendants can be awarded defense costs from plaintiffs seeking recovery under the FLSA, and such a notice may discourage plaintiffs from joining the litigation.  Gieseke v. First Horizon Home Loan Corp., 2006 WL 2919076, 2 (D. Kan. Oct. 11, 2006); Austin v. CUNA Mut. Ins. Soc'y, 232 F.R.D. 601, 608 (W.D.Wis. 2006) (collecting cases).

3.      Notice of Right to Separate Representation.

Citing DeKeyser v. Thyssenkrupp Waupaca, Inc., 2008 WL 5263750, 5 (E.D. Wis. 2008), Cargill claims the notice should not include a designation of class counsel, and should state the opt-in plaintiffs are entitled to be represented by their own counsel within this lawsuit. See id. (holding the notice was essentially a retainer

-17-

agreement, and "As I see no reason why such a provision designating counsel should be included in a notice under § 216(b) in the first place, I will order it removed.").

The notice as written states plaintiffs' counsel will represent any plaintiffs who opt-in to this lawsuit, and also states: "If you choose not to join in this lawsuit, you are free to file your own lawsuit."  In combination, these notice statements advise putative plaintiffs of their right to file a separate lawsuit and not be represented by the named plaintiffs' counsel, but as to those  plaintiffs who decide to opt-in, they are bound by the outcome of the case, and the representations and conduct of the counsel identified in the notice.  Robinson-Smith v. Government Employees Ins. Co., 424 F.Supp.2d 117, 121 (D.D.C. 2006)(noting an opt-in plaintiff is bound by the acts of class counsel where all potential collective action members were notified of their right to individually or collectively file a separate action).

The notice need not state any individual plaintiffs may join this lawsuit but have their own lawyer.  In the interest of ease of case management and progression within this court, any individual plaintiffs seeking FLSA recovery under the core of operative facts at issue in this litigation, but through the representation of different counsel, can file a separate action.  This separate action will then be re-assigned to the undersigned district judge under this court's local rules .

B.    Dissemination of Notice.

The plaintiff proposes distributing notice by not only mail, but a workplace posting, and radio and newspaper announcements.  The putative plaintiffs do not work "over-the-road," but rather in one consistent location.  Compare, e.g., Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 493 (E.D. Cal. 2006).  There is no evidence personal mailing will be an unreliable means of delivering notice to the putative plaintiffs.  Unless and until such evidence is presented, and the court rules otherwise, notice by mailing is the only court-approved method for disseminating

-18-

notice of plaintiffs' collective action to Cargill employees.  See, DeKeyser, 2008 WL 5263750, at *6; Mowdy v. Beneto Bulk Transp., 2008 WL 901546, 9 (N.D.Cal. March 31, 2008); Sharer v. Tandberg, Inc., 2006 WL 2988104, 3 (E.D. Va. Oct. 17, 2006).

      C.     Opt-In Deadline.

The plaintiffs' proposed notice allows putative plaintiffs 120 days to "opt in" to this collective action.  The defendant argues 120 days is excessive.  There is no evidence the putative plaintiffs are a transient population, or that due to vocation, they may not timely receive their mail.  See e.g., Williams v. Bally's Louisiana, Inc., 2006 WL 1235904, *3 (E.D. La. 2006) (allowing a 180-day opt-in period where the putative plaintiffs were seamen); Recinos-Recinos v. Express Forestry, Inc., 233 F.R.D. 472, 482-483 (E.D. La. 2006) (allowing 180 days where the putative plaintiffs were temporary foreign workers).  Forty-five days is sufficient time for putative plaintiffs to consider their options and, if desired, seek the assistance of outside counsel in deciding whether to join this lawsuit.  See e.g., Greenwald v. Phillips Home Furnishings, Inc., 2009 WL 1025545 (E.D. Mo. April 15, 2009) (45 days); DeKeyser, 2008 WL 5263750, at *6 (45 days) Williams v. Long, 585 F. Supp. 2d 679 (D. Md. 2008) (30 days).  In contrast, as to those plaintiffs who have already joined, 120 days will substantially delay the progress of this litigation.  The plaintiffs' notice will set a forty-five day deadline for recipients to consider, complete, and mail their "Opt-in Consent Forms."

      D.     Disclosure of Employee Social Security and Telephone Numbers.

Plaintiffs' counsel has requested disclosure of the putative plaintiffs' social security and telephone numbers, claiming this information is needed to assure all potential plaintiffs are located and notified.  There is no evidence indicating Cargill is unable or unwilling to provide correct and current addresses for its employees, and

therefore no evidence supporting plaintiffs' request for personal phone numbers or highly sensitive identification information such as social security numbers. See, e.g., Montoya v. S.C.C.P. Painting Contractors, Inc., 2008 WL 554114, 4 (D. Md. Feb. 26, 2008); Marroquin v. Canales, 236 F.R.D. 257, 259 (D. Md. 2006). The plaintiff's request for social security and telephone numbers for the Cargill employees will be denied. Bredbenner v. Liberty Travel, Inc., 2009 WL 2391279, at *3 n. 3 (D.N.J. July 31, 2009); Camesi v. University of Pittsburgh Medical Center, 2009 WL 1652216, at *1 (W.D. Pa. June 10, 2009);Kelly v. Bluegreen Corp., 256 F.R.D. 626 (W.D.Wis. Feb. 20, 2009); Ritzer v. UBS Fin. Servs., Inc., 2008 WL 4372784, at *4 (D.N.J. Sept. 22, 2008).

Based on the forgoing,

IT IS ORDERED:

1)   The defendant's motion for leave to provide supplemental authority, (filing no. 37), is granted, and the defendant's supplemental authorities have been considered in ruling on plaintiff's motion for conditional certification of a class.

2)   Plaintiff's motion for conditional certification of a class , (filing no. 19), is granted in part and denied in part as follows:

   a.   The class for this FLSA collective action is defined to include:

      All current and former non-exempt hourly employees who have been employed at any time by Defendant at its Schuyler, NE facility during the time period April 20, 2006 to the present, who were compensated on a gang time system and wore or used personal protective equipment.

   b.   Antonio Guzman is not a named plaintiff and representative for the conditional certified class.

    c.    The Union will not be added as a plaintiff or defendant, and will not be added as an intervening party absent consideration of any motion to intervene the Union may file.

    d.    The clerk shall remove Antonio Guzman as a named plaintiff.

3)    On or before December 23, 2009:

    a.    The defendant shall provide plaintiffs' counsel with computer-readable database containing listing the names and last-known addresses of all employees who may be plaintiffs in this case under the class definition set forth in paragraph 1(a) of this order. Plaintiffs' counsel shall not demand or receive from the defendant social security and phone numbers for the putative plaintiffs absent leave of the court for good cause shown.

    b.    Plaintiffs' counsel shall file the English translation of the executed consent forms already filed in this case, along with counsel's affidavit or declaration attesting to the accuracy of the English translation.  Plaintiffs' counsel is advised that the court will review this translation to determine if the form used by plaintiffs' counsel prior to court approval adequately advised the plaintiffs of their rights and can be construed as a knowing and voluntary consent to join this litigation, or whether a separate form will need to be served on those who signed the form.

    c.    As a separate <u>restricted access</u> filing, plaintiffs' counsel shall file a declaration or affidavit listing, by court filing number, the name and date of birth for those who have already filed consents in this case, along with the date when the consent was executed.

    d.    Counsel for the plaintiff and defendants shall meet and confer to jointly develop a brief, neutral, and factually correct statement explaining the allegations and defenses pleaded for placement in the notice to be sent to putative class members.

4)      On or before January 8, 2010, plaintiffs' counsel shall file a motion for approval of plaintiffs' proposed notice of collective action and "Opt-in Consent Form," and

      a.      An English and Spanish version of both forms shall be attached to the plaintiffs' motion for review by the court and its staff interpreter;

      b.      The proposed notice shall be modified in accordance with this opinion, to include changing the named plaintiff, the heading, and the case description, and stating the opt-in consent forms must be executed and returned by mail within 45 days. Plaintiffs' counsel shall also add a date-of-birth line on the "Opt-in Consent Form" below the signature line.

5)      Any objection to the plaintiffs' motion for approval of notice and opt-in consent form shall be filed on or before January 15, 2010.

6)      Within five days following court approval of the plaintiffs' notice and opt-in consent form, plaintiffs' counsel shall mail an English and Spanish version of these forms to the putative plaintiffs. Plaintiffs' counsel shall also file a certificate of service stating when the forms were mailed. Other than mailing, no other method of delivering notice shall be used absent prior approval of the court.

7)      Plaintiffs' counsel shall file the executed Opt-In Consent Forms as <u>restricted access</u> documents upon receipt.

8)      The Clerk's office in Lincoln shall maintain a listing of all persons for whom "Opt-In Consent Forms" are filed. The clerk will list the opt-in plaintiffs' names in alphabetical order, and for each plaintiff, state the plaintiff's date of birth, the filing number of the consent form, and the date it was filed.

9)      The parties shall not modify of any dates or deadlines in this order without prior approval of the court.

December 11, 2009.            BY THE COURT:

                                    *Richard G. Kopf*
                                    United States District Judge