IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JUAN MARTINEZ, on behalf of himself and all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>CARGILL MEAT SOLUTIONS CORPORATION,<br><br>      Defendant. | Case No: 4:09CV3079 |
| DALE HAFERLAND, JUAN MUNOZ, KARLA VELASQUEZ, and MANUE CORONA, on behalf of themselves and all other similarly situated individuals,<br><br>      Plaintiffs,<br><br> v.<br><br>CARGILL MEAT SOLUTIONS CORPORATION,<br><br>      Defendant. | Case No. 8:09CV00247 |

**ORDER GRANTING JOINT MOTION FOR ENTRY OF STIPULATED
PROTECTIVE ORDER REGARDING PLAINTIFFS' JULY 8, <u>2010</u>
<u>INSPECTION OF DEFENDANT'S SCHUYLER, NEBRASKA PLANT</u>**

  Pursuant to the parties' Joint Motion and Stipulation, filed in *Martinez* as document number 84 and in *Haferland et al.* as document number 56, and for good cause shown,

  IT IS HEREBY ORDERED that a Protective Order Regarding Plaintiffs' July 8, 2010 Inspection of Defendant's Schuyler, Nebraska Plant shall be entered in this matter with the following provisions:

1. Plaintiffs have requested an inspection by a team of three attorneys for Plaintiffs, as well as Plaintiffs' expert and videographer/photographer, of Defendant's Schuyler, Nebraska meatpacking facility.  Both Plaintiffs' expert and the videographer/photographer will be recording the activities of class members and taking measurements of distances throughout the facility.  The initial inspection shall be limited to one day, per agreement of the parties, to be conducted on July 8, 2010.  Only Plaintiffs' expert, with one video camera operator, and three attorneys representing Plaintiffs (hereinafter referred to as "Plaintiffs' Inspection Team"), shall be allowed access to Defendant's Schuyler facility.  The video cameras shall be a hand-held model without a tripod, external electrical power lines, or artificial lights.  Such inspection shall be made during the facility's normal hours of operation.  Plaintiffs' expert shall also use a measuring wheel or other similar device throughout the facility to take appropriate distance measurements.  Neither Plaintiffs' counsel nor Defendant's counsel shall provide any advance notice of the date and time chosen for inspection to the named Plaintiffs, putative class members, opt-in plaintiffs, or any other of Defendant's employees, with the exception of General Manager Steve Thompson, Slaughter Manager John Hill, Fabrication Manager Tom Bolte, and Human Resources Manager Sarah Heller-Glen and second shift superintendants all of whom need to be notified in advance for purposes of making arrangements to accommodate the inspection.  Defendant's counsel will instruct these individuals not to

notify any other of Defendant's employees of the inspection in advance. Plaintiffs' Inspection Team shall be accompanied by at least one representative of Defendant at all times during the inspection and orientation tour.

2. The cameras shall be permitted to videotape only non-exempt hourly employees presently employed by Defendant at its Schuyler, Nebraska facility who are compensated on a gang time system and wear or use personal protective equipment (referred to hereafter as the "Workers") and only with respect to the following activities at the Schuyler facility, if applicable:

   a. donning and doffing clothing, personal protective equipment and other equipment and all activities performed prior to and subsequent to donning and before the start of gang time and all activities performed after the end of gang time up until the time the employees exit the facility;

   b. Worker activities occurring during the rest breaks and meal periods, including, but not limited to, leaving and returning to the production line;

   c. cleaning, washing, rinsing and sanitizing of clothing, personal protective equipment, tools and other equipment and the Workers' bodies;

   d. clothing, personal protective equipment and tool and other equipment retrieval and drop-off;

    e.    activities before and after what is commonly referred to as "gang time," including walking and waiting;

    f.    removing clothing, personal protective equipment, tools and other equipment from and restoring clothing, personal protective equipment, tools and other equipment to employee lockers;

    g.    swiping/punching in at time clocks, including walking and waiting to do so;

    h.    knife sharpening and knife edge straightening, steel sanding and any other activities performed by the Workers to prepare their tools and equipment; and

    i.    Worker activities during gang time.

3. Plaintiffs' Inspection Team shall wear any protective and sanitary clothing and equipment that Defendant directs, and they shall comply with any and all safety and sanitary policies or practices of the plant, as directed by Defendant's representative who will accompany Plaintiffs' Inspection Team as indicated below.  Plaintiffs' Inspection Team shall be required to review and sign the applicable Visitor Agreement, Waiver and Release as required for visitors to Defendant's facility.

4. Plaintiffs' Inspection Team's inspection, observation, and videotaping will not be conducted in any manner that will impede or interfere with the operations and activities of Defendant or the privacy and/or activities of Defendant's employees (other than those activities specifically listed in this Order).  Plaintiffs' Inspection Team shall not question or

communicate with any of Defendant's employees or the representatives that accompany Plaintiffs' Inspection Team.  All questions must be directed solely to Defendant's counsel, who may elect to accompany Plaintiffs' Inspection Team during the inspection.

5. Plaintiffs' Inspection Team shall inspect, measure and videotape only those portions of the facility that are relevant to the Workers and to this lawsuit.  Such areas include, but are not limited to, the entrances/exits to the facility, the laundry, knife, or supply rooms; the entrance/exit ways to the slaughter and fabrication areas of the facility; the locker rooms used by the Workers; the slaughter and fabrication production floors; the time clocks used by the Workers; areas used by the Workers to clean and sanitize their bodies, clothing, equipment and tools; areas used by the Workers to prepare and maintain their tools and equipment; the entrance/exit ways to the locker rooms and cafeteria/break rooms used by the Workers.  Plaintiffs' Inspection Team shall also be allowed to inspect or videotape the slaughter and fabrication areas of the plant where Workers are actually engaged in the production process insofar as such is relevant to establishing the equipment and clothing actually worn by Workers during processing work, the donning, doffing, cleaning, sanitizing, walking, waiting and other related work activities relevant to this lawsuit and to show the operation of the "gang time" system. Inspections and videotaping shall not take place in any area of the plant where Workers are not present, nor shall it take place in the management

areas of the plant, nor shall Plaintiffs' Inspection Team videotape any USDA inspectors or activities of USDA inspectors that may be present.

6. Within fourteen days of the completion of the inspection, Plaintiffs' counsel shall provide Defendant, at Plaintiffs' expense, with an unedited copy of all videotapes obtained from the onsite inspection. Plaintiffs' counsel shall maintain the original and all copies of the videotapes (other than the copy provided to Defendant) and shall not distribute, dispense, provide, display, or allow dissemination of the videotapes or copies to any other person, party, or entity (other than the expert for Plaintiffs, the expert's assistants, and counsel's support staff). Notwithstanding any provision above, this Protective Order does not restrict Defendant's right to disclose or reveal its own confidential or proprietary information to whomever it chooses.

7. Each member of Plaintiffs' Inspection Team (and any other assistants or staff who may be assigned to work on or with respect to the videotapes) shall execute a certification that they are aware of this Protective Order and its provisions, that they are aware of its prohibition against the use and disclosure of the videotapes and information gathered during these inspections for any purpose unrelated to the preparation and litigation of this case, that the provisions of the Protective Order shall continue in force and effect even after the conclusion and termination of this litigation, and that they submit themselves to the jurisdiction of the court for purposes of enforcement of the Protective Order. These certifications, in the form

attached as <u>Exhibit A</u>, will be filed with the Court following the inspection. Within twenty days after the conclusion of this action, Plaintiffs' counsel shall assemble and return to Defendant's counsel all originals and copies of the videotapes gathered during the inspection.

8. Each member of Plaintiffs' Inspection Team agrees to release and hold harmless Defendant from any and all loss, damage or injury to their property or person, including death, caused by or resulting from, or alleged to have been caused by or resulted from, the condition of Defendant's premises, including any machinery and equipment thereon, and/or the actions or failure to act of Defendant's agents or employees; and this release shall be effective whether or not such loss, damage or injury is caused or alleged to have been caused by the negligence of Defendant, its agents or employees.

9. Any further inspections shall be scheduled by agreement of counsel for the parties and Order of this Court and shall be governed by the terms of a subsequently negotiated Stipulated Protective Order.

10. The terms, conditions, and provisions of this Protective Order shall continue in force and effect even after the conclusion and termination of this case, and specifically, the court retains jurisdiction to enforce the Protective Order notwithstanding the termination or dismissal of this action.

11. Either party may seek modification of this Protective Order by written motion served on the opposing side. The Protective Order shall remain in

full fore and effect, however, until otherwise provided by further order of the Court.

Dated:   July 6, 2010

                                         BY THE COURT:

                                         s/ *Cheryl R. Zwart*
                                         United States Magistrate Judge