IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JUAN MARTINEZ and ANTONIO GUZMAN, on behalf of themselves and all others similarly situated, | ) ) ) ) | 8:09CV247 |
| Plaintiffs, | ) ) | |
| v. | ) ) | **MEMORANDUM AND ORDER** |
| CARGILL MEAT SOLUTIONS CORP., | ) ) ) | |
| Defendant. | ) ) | |
| DALE HAFERLAND, JUAN MUNOZ, KARLA VELASQUEZ, and MANUE CORONA, on behalf of themselves and all other similarly situated individuals, | ) ) ) ) ) ) | 4:09CV3079 |
| Plaintiffs, | ) ) | **MEMORANDUM AND ORDER** |
| v. | ) ) | |
| CARGILL MEAT SOLUTIONS CORP., | ) ) ) | |
| Defendant. | ) ) | |

This is a collective action[1] brought on behalf of hourly production-line workers

---

[1]Cases 4:09CV3079 and 8:09CV247 are both collective actions under section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b). These cases have been consolidated, and 4:09CV3079 has been designated as the "lead" case. (Filing 61 in 4:09CV3079.) Case number 8:09CV247 also includes class-action claims under the Nebraska Wage and Hour Act, Neb. Rev. Stat. §§ 48-1201 to -1209, and the Nebraska

at Defendant's beef-processing plant in Schuyler, Nebraska, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). Plaintiffs allege that defendant Cargill Meat Solutions Corp. ("Cargill") fails to pay its production-line workers for all the time they spend donning and doffing their required personal protective equipment and gear ("PPE"), cleaning and sanitizing that equipment, sharpening knives or otherwise dealing with equipment, and walking between various parts of the plant after they engage in their first principal work activity.

Specifically, Plaintiffs allege that while their collective-bargaining agreement ("CBA") with Cargill may allow Cargill to "exclude[] any time spent in changing clothes or washing at the beginning or end of each workday" pursuant to 29 U.S.C. § 203(o)[2], the CBA cannot exclude the following time from being compensated under the FLSA:

> a) obtaining tools, equipment and supplies necessary for the performance of their jobs; b) obtaining, preparing, donning, doffing, and sanitizing equipment and other protective clothing before and after meal breaks; c) obtaining, preparing, donning, doffing, and sanitizing equipment which is not clothes at the beginning and end of each workday; d) sharpening knives or using knife maintenance equipment known as "steels" or "mousetraps;" e) sanitizing knives; f) cleaning steels and mousetraps; and

---

Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228 to -1232. Conditional class certification was granted in 8:09CV247. Citations to various filings will correspond to the lead case, 4:09CV3079, unless otherwise indicated.

[2]29 U.S.C. § 203(o) provides that in determining "the hours for which an employee is employed" for purposes of the minimum-wage and maximum-hours provisions of the FLSA, "there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."

g) walking between work sites before the first work activity and after the last work activity of the day.

(Filing 1 in 4:09CV3079, Complaint ¶ 3.)  Plaintiffs allege that Cargill's failure to pay them for these "off-the-clock" activities (1) violates 29 U.S.C. § 207 and the Nebraska Wage and Hour Act because Plaintiffs are deprived of overtime compensation at the rate of time and one-half their regular hourly rate of pay; (2) violates 29 U.S.C. § 206 because if this "off-the-clock" time is included as time worked, Plaintiffs are receiving less than the federally mandated minimum wage; and (3) violates the Nebraska Wage Payment and Collection Act because Plaintiffs are not being paid "their hourly rate of pay for all hours of work they performed." (Filing 1 in 4:09CV3079, Complaint; Filing 1 in 8:09CV247, Complaint.)

Cargill has moved for partial summary judgment on Plaintiffs' claims for overtime pay based on pre- and post-shift donning, doffing, walking, and waiting time. (Filing 88 in 4:09CV3079; Filing 60 in 8:09CV247.)  Cargill makes three arguments in support of its motion:

(1)     Section 3(o) of the FLSA bars Plaintiffs' FLSA claim to wages for pre- and post-shift donning and doffing and related activities because section 3(o) allows employers and unions to agree to exclude from hours worked time spent changing into and out of "clothes" at the beginning and end of a workday, which includes protective clothing and equipment. Further, Plaintiffs cannot recover on their pre- and post-shift walking-time claims because an activity that is excluded from compensable time pursuant to section 3(o) cannot mark the beginning or end of a compensable workday;

(2)     Section 259 of the FLSA affords Cargill a complete defense to liability for Plaintiffs' pre- and post-shift donning and doffing and walking-time claims because Cargill has relied in good faith on published

3

opinion letters from the United States Department of Labor with regard to its compensation practices at the Schuyler plant; and

(3)     Plaintiff's state-law claims are preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and, in any event, are not supported by the facts.[3]

(Filing 89, Br. Supp. Mot. Partial Summ. J. at CM/ECF pp. 2-3, 15-16.)

## I.

While the parties agree on very little, these are the undisputed material facts for purposes of Cargill's motion for partial summary judgment:

1.     The parties do not dispute that this court has jurisdiction and that venue is proper.  (Filing 17, Report of Parties' Rule 26 Planning Meeting at CM/ECF p. 1.)

2.     Cargill owns and operates a beef-processing plant in Schuyler, Nebraska (the "Schuyler Plant").  (Filing 1 in 4:09CV3079 ¶ 1; Filing 1 in 8:09CV247 ¶ 1.)

3.     Plaintiffs are current and former non-exempt production-line and support employees at the Schuyler Plant. (Filing 1 in 4:09CV3079 ¶ 2; Filing 1 in 8:09CV247

---

[3]Cargill stresses that it is *not* moving for summary judgment on Plaintiffs' "meal period" claims; claims related to pre-shift activities such as "time spent sanding steels" and sanitizing tools and equipment; and claims related to the adequacy of the amount of additional compensation Cargill allegedly has paid employees for post-shift equipment washing, walking, and waiting time and, if such compensation was insufficient, whether Plaintiffs are barred from recovering any additional paid time for post-shift activities other than doffing their protective clothing and equipment. (Filing 89, Br. Supp. Mot. Partial Summ. J. at CM/ECF p. 2 n.1; Filing 103, Reply Br. Supp. Mot. Partial Summ. J. at CM/ECF p.4.)

¶¶ 1, 3.)

4.     At all relevant times, production and maintenance employees at the Schuyler Plant have been represented by the United Food and Commercial Workers International Union Local No. 22 (the "Union"). (Filing 1 in 4:09CV3079 ¶ 3; Filing 90, Ex. A, Agreement Between Cargill & Union, Nov. 5, 2005, through November 14, 2010 ("2005 CBA").)

5.     The Union is the sole and exclusive bargaining representative of Schuyler employees in a unit consisting of all production and maintenance employees. (Filing 90, Ex. A, 2005 CBA at Art. 1.)

6.     The Union-represented bargaining unit at the Schuyler Plant includes all jobs in the FLSA class conditionally certified in this lawsuit, which consists of "[a]ll current and former non-exempt hourly employees who have been employed at any time by Defendant at its Schuyler, NE facility during the time period from April 20, 2006 to the present, who were compensated on a gang[-]time system and wore or used personal protective equipment." (Filing 78 in 4:09CV3079.) The Plaintiffs' and putative class members' gang-time compensation is calculated for each worker pursuant to the collective-bargaining agreement between the Union and Cargill. (Filing 90, Ex. A, 2005 CBA at Art. 5.02.)

7.     "Gang time" is the amount of time that elapses between the arrival of the first piece of meat and last piece of meat at a designated point on the production line. The designated points are set by the 2005 CBA and the gang time for each shift is recorded by a Cargill management person and verified by a Union member at the Schuyler Plant. (Filing 90, Ex. C, Heller-Glen Dep. 49:7-52:12; 63:12-66:2.)

8.     In performing their respective jobs, gang-time employees wear a variety of personal protective equipment ("PPE"). The PPE worn by any particular employee depends on the work performed by the employee and differs among the various

5

departments at the Schuyler Plant.  (Filing 90, Ex. D, Heller-Glen Decl. ¶ 16.)  The common items of PPE worn by many gang-time employees at the Schuyler Plant include frocks, hair nets, ear plugs, hard hats, rubber or cotton gloves, and boots. (Filing 90, Ex. D, Heller-Glen Decl. ¶ 17; Filing 90, Ex. B, Thompson Dep. 53:22-54:6.)

9.    Employees who work in positions requiring the use of a knife, such as plaintiff Juan Martinez, also wear one or more of the following items of PPE:  mesh apron, mesh sleeve, plastic arm guard, mesh glove, rubber glove, polar sleeve (a/k/a Kevlar sleeve), Kevlar glove, chain belt, scabbard, or shin guards. (Filing 90, Ex. D, Heller-Glen Decl. ¶ 16; Filing 90, Ex. E, Martinez Dep. 24:23-30:15; Filing 90, Ex. G, Job Task Procedure for Trim Clods Position; Filing 90, Ex. H, Additional Job Task Procedures.)

10.    The 2005 CBA between the Union and Cargill that was in effect throughout the relevant time period provides that employees are not paid for the time they spend changing clothes, including the donning and doffing of safety clothing and equipment worn in their jobs, and the time they spend washing up before and after paid production work.  (Filing 90-1, 2005 CBA Art. 6.08, at CM/ECF p. 11.)[4]

---

[4]Section 6.08 of the 2005 CBA provides:

The parties agree that the time employees spend changing clothes, including the donning and doffing of safety clothing and equipment worn in their jobs, and the time they spend washing up before and after paid production work, shall be excluded from the employees' paid workdays. The parties agree, however, that employees who are required to wear safety clothing and equipment as defined in the agreement between Cargill Meat Solutions and United Food and Commercial Workers Local 22 shall be paid for an amount of time as determined by joint time studies beyond paid production work to compensate them for the time they spend outside of paid production work cleaning their safety clothing and equipment.

11.    During the relevant time period, the base labor wage rates for gang-time employees under the 2005 CBA ranged from $11.50 to $12.70 per hour, and employees could make substantially more on a per-hour basis due to their seniority or due to premium rates paid for certain work shifts.  (Filing 90, Ex. A, 2005 CBA at Art. 6.)  The base labor rate was $11.50 per hour until November 13, 2006; $11.80 per hour from November 13, 2006, to November 11, 2007; $12.10 per hour from November 12, 2007, to November 11, 2008; $12.40 per hour from November 13, 2008, to November 15, 2009; and $12.70 per hour from November 16, 2009, to the present.  (*Id.*)

12.    For purposes of the pending motion for partial summary judgment, Cargill accepts as true plaintiff Juan Martinez's statement that he was not paid for approximately 62-78 minutes each day, which includes the activities excluded under Article 6.08 of the 2005 CBA, plus 15-20 minutes of sanding his knife sharpener each night, and 7-8 minutes once a month to get a new metal apron, metal gloves, or boots.  (Filing 90, Ex. K, Martinez Resp. to Interrog. No. 10.)

13.    For purposes of the pending motion for partial summary judgment only, Cargill accepts as true plaintiff Antonio Guzman's allegation that, while working in the fabrication department, he was not paid for 50-65 minutes each day, which includes the activities excluded under Article 6.08 of the 2005 CBA, plus 15-20 minutes of cleaning his knife sharpeners each night, 1-2 minutes each week to obtain replacement equipment, and 5 minutes each time Cargill determined that his equipment was not properly cleaned; that, while working in the packing department, he was not paid for 36-45 minutes each day, plus 1-2 minutes each week to obtain replacement equipment; and that, while working in the kill department, he was not paid for 27-36 minutes each day.  (Filing 90, Ex. L, Guzman Resp. to Interrog. No. 10.)

14.    At all times during the relevant time period, Cargill paid gang-time employees at the Schuyler Plant 3, 4, or 5 minutes per day in addition to gang time, depending on the department in which the employee worked and the specific PPE worn by the employee.  (Filing 90, Ex. I, Bright Dep. 58:2-61:5; Filing 90, Ex. C,

7

Heller-Glen Dep. 165:18-167:6; Filing 90, Ex. J, Heller-Glen Memo.) These supplemental minutes were paid to compensate employees for donning and doffing their PPE, walking, waiting, washing their PPE, and related activities that occurred during the unpaid meal period and at the end of the work shift. The supplemental minutes were derived from a joint time study conducted in May 2000 by the Union and Cargill. (Filing 90, Ex. I, Bright Dep. 59:21-61:5.)[5]

15.     The United States Department of Labor ("DOL") has issued conflicting opinions regarding its interpretation of section 3(o) of the Fair Labor Standards Act, 29 U.S.C. § 203(o).

16.     The DOL's 1997 opinion applied FLSA section 3(o) to the meat-packing industry, concluding that "the phrase 'changing clothes or washing' in section 3(o) does not include the putting on, taking off, or washing of that protective safety equipment utilized in the meat packing industry which is integral to the performance of an employee's principal activity." The DOL explained that "clothes" in section 3(o) "does not encompass protective safety equipment," but instead refers "to apparel"; "washing" in section 3(o) "refers only to washing oneself"; and time spent putting on, taking off, and washing of protective safety equipment "cannot be excluded from hours worked pursuant to the express terms or the custom or practice under a collective

---

[5]Plaintiffs assert that the amount paid by Cargill for these activities grossly under-compensates Plaintiffs because Plaintiffs spend anywhere from 50 to 78 minutes daily performing supplemental activities such as donning, doffing, and cleaning their PPE; walking from their work areas to the wash station; and waiting to wash and washing their PPE. Further, Plaintiffs question the "veracity" of the joint time study conducted in May 2000 because it was not tailored to the Schuyler plant, its sample size was too small, and it undervalued the amount of time spent performing the above-listed supplemental activities. (Filing 91, Pls.' Br. Opp'n Mot. Partial Summ. J. at CM/ECF pp. 32-33, 47.) However, these issues are irrelevant to the legal issues raised by the defendant's motion for partial summary judgment.

bargaining agreement." *Opinion Letter, Fair Labor Standards Act (Dep't of Labor Dec. 3, 1997), available at* 1997 WL 998048.  (Filing 93-1.)

17.    The DOL's 2001 opinion, which sought to clarify its interpretation of FLSA section 3(o), stated, "An employer must compensate its employees for any activity that is an integral and indispensable part of the employee's principal activities, including the putting on, taking off and cleaning of personal protective equipment, clothing or gear that is required by law, by rules of the employer or by the nature of the work."  Further, the opinion stated that in order to comply with the FLSA, "a company must record and pay for each employee's actual hours of work, including compensable time spent putting on, taking off and cleaning his or her protective equipment, clothing or gear."  *Opinion Letter, Fair Labor Standards Act (Dep't of Labor Jan. 15, 2001), available at* 2001 WL 58864.  (Filing 93-2.)

18.    The DOL's 2002 opinion withdrew the 1997 and 2001 opinions as they related to section 3(o) and concluded that "changing clothes," as used in section 3(o), "applies to the putting on and taking off of the protective safety equipment typically worn in the meat packing industry" and "washing" applies only to washing one's person, not to "the cleaning or sanitizing of protective equipment."  Further, the opinion stated that "clothes" in section 3(o) "include[s] items worn on the body for covering, protection, or sanitation, but not to include tools or other implements such as knives, scabbards, or meat hooks."  (Filing 93-3.)

19.    More than three years after the DOL issued its 2002 opinion letter, Cargill began negotiations with the Union at Schuyler for what became the November 2005 collective-bargaining agreement. (Filing 90, Ex. I, Bright Dep. 182:2-186:15.)  After the 2005 CBA was ratified by the Union members at the Schuyler plant, Cargill on its own behalf requested an opinion letter from the DOL.  (Filing 90, Ex. I, Bright Dep. 116:15-118:9.)  Cargill's opinion request asked these questions:

(1)    Whether, notwithstanding the opinion of the Court of Appeals for

the Ninth Circuit in *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003)[6], the Department of Labor continues to maintain the interpretation of Section 3(o) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §203(o), set forth in the opinion letter issued by Administrator Tammy McCutchen on June 6, 2002 (FLSA2002-2)?

(2)    Whether, outside states within the jurisdiction of the Ninth Circuit, [Cargill] may continue to rely on the June 6, 2002 opinion letter as the basis for a "good faith" defense under 29 U.S.C. §259 against donning and doffing claims at locations where it has negotiated collective bargaining agreements that exclude equipment donning and doffing time from compensable work time by the express terms or by custom and practice under the collective bargaining agreements?

(Filing 93-6 at CM/ECF p. 1.)

20.    In specific response to Cargill's opinion request, the DOL issued its 2007 opinion letter, concluding:  (a) "changing clothes" in section 3(o) "applies to putting on and taking off the protective safety equipment typically worn by employees in the meat-packing industry," and this clothing "includes . . . heavy protective safety equipment worn in the meat-packing industry such as mesh aprons, sleeves and gloves, plastic belly guards, arm guards, and shin guards"; (b) despite the Ninth Circuit's rejection of the DOL's 2002 opinion letter in its *Alvarez* decision, "employers may continue to rely on the letter for practices in states outside the jurisdiction of the Ninth Circuit"; (c) "activities covered by section 3(o) cannot be considered principal activities and do not start the workday"; and (d) "[w]alking time after a section 3(o)

---

[6]In *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003), the court found, among other things, that putting on and taking off required personal protective gear as part of employment at a meat-production plant did not constitute "changing clothes" within the meaning of 29 U.S.C. § 203(o), and was therefore compensable work under the FLSA.

activity is therefore not compensable unless it is preceded by a principal activity." (Filing 93-4.)

21.    Finally, the DOL issued "Administrator's Interpretation No. 2010-2" on June 16, 2010, addressing the subject of "Section 3(o) of the Fair Labor Standards Act, 29 U.S.C. § 203(o), and the definition of 'clothes.'"   (Filing 93-5.)  After discussing the DOL's prior conflicting opinions on the subject of whether protective equipment could be classified as "clothes" under section 203(o); the divergent dictionary definitions of "clothes"; the sparse legislative history surrounding section 203(o); and federal court decisions that have concluded that time spent donning and doffing protective equipment worn by meat-packing employees is a compensable activity, the DOL adopted the following interpretation:

> [I]t is the Administrator's interpretation that the § 203(o) exemption does not extend to protective equipment worn by employees that is required by law, by the employer, or due to the nature of the job.  This interpretation reaffirms the interpretations set out in the 1997, 1998 and 2001 opinion letters and is consistent with the 'plain meaning' analysis of the Ninth Circuit in *Alvarez*.  Those portions of the 2002 opinion letter that address the phrase 'changing clothes' and the 2007 opinion letter in its entirety, which are inconsistent with this interpretation, should no longer be relied upon.

(Filing 93-5 at CM/ECF p. 5.)  Further, the DOL found that clothes-changing that is made non-compensable by section 203(o) may be considered a "principal activity" under the Portal-to-Portal Act, 29 U.S.C. § 254, that may start the continuous workday. "Where that is the case, subsequent activities, including walking and waiting, are compensable."  (Filing 93-5 at CM/ECF p. 6.)

## II.

"The court shall grant summary judgment if the movant shows that there is no

11

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the unresolved issues presented are primarily legal rather than factual, summary judgment is particularly appropriate.[7] *Cremona v. R.S. Bacon Veneer* Co., 433 F.3d 617, 620 (8th Cir. 2006); *Crain v. Board of Police Comm'rs*, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

### III.

#### A.  *FLSA—Section 3(o)*

##### 1.  *Meaning of "Clothes"*

Cargill first claims that it is entitled to summary judgment on Plaintiffs' donning and doffing claims at the beginning and end of the workday because 29 U.S.C. § 203(o) allows employers and unions to agree to exclude from "hours worked" time spent changing into and out of "clothes" at the beginning and end of a workday, and "clothes" includes a wide range of protective clothing and equipment, according to the clear majority of United States Circuit Courts of Appeal that have considered this issue. In contrast, Plaintiffs argue that the PPE at issue does not constitute "clothing" under section 203(o).

The FLSA requires that employees be paid overtime compensation for "hours worked" in excess of 40 per week at a rate not less than one and one-half times the regular rate at which they are employed. 29 U.S.C. § 207(a)(1). However, in defining

---

[7]In its brief in support of its motion for partial summary judgment, Cargill represents that "[t]he parties have agreed to hold further discovery of individual class members and experts in abeyance and to limit discovery to [Cargill's] defenses under the FLSA, in particular Section 3(o) and Section 259, and to the state law claims asserted, in order to avoid additional costs and expense."  (Filing 89 at CM/ECF pp. 1-2.)

the meaning of "hours worked," section 3(o) of the FLSA provides:

> Hours Worked.—In determining for the purposes of sections 206 and 207 . . . the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

Under Section 3(o), time spent by employees in pre- and post-shift donning and doffing of "clothes" is excluded from the computation of hours worked if: (1) the activities at issue constitute "changing clothes" as that term is used in the statute, and (2) a bona fide collective-bargaining agreement excludes, by its express terms or by a custom or practice under the agreement, time spent changing clothes from compensable working time.

"'As with any question of statutory interpretation, our analysis begins with the plain language of the statute.'" *Public Water Supply Dist. No. 3 v. City of Lebanon*, 605 F.3d 511, 516 (8ᵗʰ Cir. 2010) (quoting *Jiminez v. Quarterman*, 129 S. Ct. 681, 685 (2009)). "[I]n all such cases, [the court] begin[s] by analyzing the statutory language, 'assum[ing] that the ordinary meaning of that language accurately expresses the legislative purpose.'" *United States v. I.L., Juvenile Offender*, 614 F.3d 817, 820 (8th Cir. 2010) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2156 (2010)).

Webster defines "clothes" as "clothing," which in turn is defined as "covering for the human body or garments in general: all the garments and accessories worn by a person at any one time." Webster's Third New International Dictionary 428 (1986) (unabridged). Clearly, this broad definition encompasses the PPE at issue in this case, which consists of items that "cover[] . . . the human body" or are "accessories worn by a person." Five of the six Circuit Courts of Appeal that have addressed this issue

13

agree.  *See Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 215 (4th Cir. 2009) ("clothes" in section 203(o) encompassed garments like shoes, smocks, aprons, gloves, and sleeves, and accessories like bump caps, ear plugs, hairnets, arm shields, and glasses worn by production workers at poultry processing plant; using Webster's dictionary definition in interpreting statute); *Franklin v. Kellogg Co.*, 619 F.3d 604, 614-15 (6th Cir. 2010) (mandatory food-safety uniforms and protective equipment worn by employees are "clothes" within meaning of section 203(o); referring to broad Webster dictionary definition of "clothes"); *Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427, 428 (7th Cir. 2010) (Easterbrook, C.J.) (argument that required protective and safety gear worn by employees who prepare meat products is not "clothing" under section 203(o) "is a loser, for reasons given in *Sepulveda*"); *Allen v. McWane, Inc.*, 593 F.3d 449, 454 n.3 (5th Cir. 2010) (noting that Fifth Circuit had previously determined that protective gear constitutes "clothes" under section 203(o), and that parties in case did not dispute that "changing clothes" in section 203(o) included the donning and doffing of such items); *Anderson v. Cagle's Inc.*, 488 F.3d 945, 955-56 (11th Cir. 2007) (garments required to be donned and doffed by employees of chicken-processing facilities in order to perform job "fit squarely within the commonly understood definition of 'clothes' as that term is used in § 203(o)"; consulting Webster dictionary definition of "clothes").  *But see Alvarez v. IBP, Inc.*, 339 F.3d 894, 904-05 (9th Cir. 2003) ("clothes" as used in section 203(o) does not include protective gear used in meat-production industry because (1) "changing clothes" is classified as FLSA "exemption" which must be narrowly construed against employer and (2) specialized protective gear is "different in kind" from typical clothing), *aff'd on other grounds*, *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005).[8]

_____

[8]Many of the Circuit Courts of Appeal that have addressed this issue have criticized the reasoning in *Alvarez* because section 203(o) simply contains definitions, not "exemptions" of entire categories of employees from the FLSA's protections that must be narrowly construed against employers.  *Anderson*, 488 F.3d at 957 (cases on which *Alvarez* relied to classify section 203(o) as "exemption" from FLSA's coverage did not concern section 203; noting that section 203 contains "Definitions" that limit the scope of the FLSA's minimum-wage and maximum-hour provisions—and is

This interpretation of section 203(o) is consistent with the applicable legislative history.  *See Anderson*, 488 F.3d at 957-58 (11th Cir. 2007).  This history reflects that passage of section 3(o) was part of Congress' ongoing efforts to curtail judicially expansive interpretations of the FLSA that Congress found to be "in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers." 29 U.S.C. § 251(a).  Representative Herter (R. Mass.), the House sponsor of the bill that would become section 3(o), explained the purpose of the amendment to the FLSA:

> Mr. Chairman, this amendment is an amendment to the definitions under the act. It is offered for the purpose of avoiding another series of incidents which led to the portal-to-portal legislation and led to the overtime-on-overtime legislation.

> At the present moment there is a twilight zone in the determinations of what constitutes hours of work which have been spelled out in many collective bargaining agreements but have not necessarily been defined in the same ways.

> Let me be specific. In the bakery industry, for instance, which is 75 percent organized, there are collective-bargaining agreements with various unions in different sections of the country which define exactly what is to constitute a working day and what is not to constitute a working day.  In some of those collective-bargaining agreements the time

---

labeled as such—instead of  "Exemptions," as found in 29 U.S.C. § 213); *Franklin*, 619 F.3d at 615 (not relying on *Alvarez* because section 203(o) is not "exemption" that must be narrowly construed against employer); *Allen*, 593 F.3d at 458 (rejecting *Alvarez* because section 203 does not contain "exemptions" of particular workers from FLSA protections, as in section 213, but rather contains definitions).  However, I "need not enter this debate" regarding the proper standard of interpretation of "definitions," as opposed to "exemptions," because in either case I am required to "'giv[e] due regard to the plain meaning of statutory language and the intent of Congress.'" *Sepulveda*, 591 F.3d at 214 n.1 (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

taken to change clothes and to take off clothes at the end of the day is considered a part of the working day.  In other collective-bargaining agreements it is not so considered. But, in either case the matter has been carefully threshed out between the employer and the employee and apparently both are completely satisfied with respect to their bargaining agreements.

The difficulty, however, is that suddenly some representative of the Department of Labor may step into one of those industries and say, "You have reached a collective-bargaining agreement which we do not approve. Hence the employer must pay for back years the time which everybody had considered was excluded as a part of the working day."  That situation may arise at any moment. This amendment is offered merely to prevent such a situation arising and to give sanctity once again to the collective-bargaining agreements as being a determining factor in finally adjudicating that type of arrangement. It sounds wordy, but in effect it is a very simple amendment.

95 Cong. Rec. H11210 (daily ed. Aug. 10, 1949) (statement of Rep. Herter).  The Fourth, Fifth, and Sixth Circuits have joined the Eleventh Circuit by citing section 3(o)'s legislative history to support their holdings that the purpose of this statutory provision was to leave the issue of payment for time spent "changing clothes" to the collective-bargaining process.  *Sepulveda*, 591 F.3d at 217-18; *Allen*, 593 F.3d at 453 n.2; *Franklin*, 619 F.3d at 615-16).[9]

---

[9]As described in detail in Section I of this memorandum and order, the Department of Labor's position on whether "clothes," as used in section 203(o), includes protective equipment required to be worn in the meat-packing industry has changed repeatedly.  Specifically, the Department of Labor's 1997 and 2001 opinions were withdrawn by its 2002 opinion, and its 2002 and 2007 opinions were withdrawn by its 2010 opinion.  Hence, I decline to defer to the agency's interpretation of this provision.  *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30 (1987) ("An additional reason for rejecting the INS's request for heightened deference to its position is the inconsistency of the positions the BIA has taken through the years. An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency

I conclude that the PPE at issue in this case constitutes "clothes" within the meaning of 29 U.S.C. § 203(o), and the donning and doffing of these items qualifies as "changing clothes" within the commonly accepted meaning of that provision.[10] Accordingly, I must now consider whether a bona fide collective-bargaining agreement between the parties excludes, by its express terms or by a custom or practice under the agreement, time spent donning and doffing the required PPE at the Schuyler plant.

It is undisputed that the 2005 CBA between the plaintiffs' union and Cargill that was in effect throughout the relevant time period expressly provided that "the time employees spend changing clothes, including the donning and doffing of safety clothing and equipment worn in their jobs, and the time they spend washing up before and after paid production work, shall be excluded from the employees' paid workdays." (Filing 90-1, 2005 CBA Art. 6.08, at CM/ECF p. 11.) Thus, pursuant to 29 U.S.C. § 203(o) and the 2005 CBA, the time spent by Plaintiffs in the pre- and post-shift donning and doffing of personal protective equipment and gear required to be worn at Cargill's Schuyler, Nebraska, beef-processing plant may be properly excluded from Plaintiffs' paid workdays, and Cargill is entitled to summary judgment on this claim.

---

view.") (internal quotation omitted); *Franklin*, 619 F.3d at 614 ("The DOL's position on this issue [the meaning of "clothes" in section 203(o)] has changed repeatedly in the last twelve years, indicating that we should not defer to its interpretation."); *Sepulveda*, 591 F.3d at 216 n.3 (referring to DOL's vacillating interpretation of "clothes" in section 203(o), and stating that "our . . . view rests upon the language of the statute, not upon the gyrating agency letters on the subject").

[10]I acknowledge that I have reached the opposite conclusion of that in *Morales v. Farmland Foods, Inc.*, No. 8:08CV504, Filing 208 at CM/ECF p. 11 (D. Neb. Aug. 16, 2010) (Bataillon, C.J.), which found "the reasoning of the Ninth Circuit [in *Alvarez*] persuasive" and concluded that "personal protective equipment does not constitute 'clothing' under section 203(o) of the Fair Labor Standards Act." For the reasons stated above, I do not find *Alvarez* to be persuasive.

## 2. *Pre-Shift Walking/Waiting Time*

Cargill next asserts that it is entitled to summary judgment on Plaintiffs' claims seeking additional compensation for pre-shift walking and waiting time that took place before May 2010 in the fabrication department and before December 2009 in the slaughter department[11] because these activities constituted "preliminary" or "postliminary" non-compensable activities under 29 U.S.C. § 254(a), part of what is known as the "Portal-to-Portal Act."  In relevant part, that section provides that unless made compensable by an express "written or nonwritten contract" between the employee or collective-bargaining representative and his or her employer, or a custom or practice,

> no employer shall be subject to any liability . . . under the Fair Labor Standards Act of 1938, as amended . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—
>
> (1) walking, riding, or traveling to and from the actual place of performance of the *principal activity or activities* which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said *principal*

---

[11]Cargill states that its motion for partial summary judgment does *not* include *post-shift* walk and wait time that occurred before December 2009 in the slaughter department and May 2010 in the fabrication department, as there are disputed issues of material fact regarding "the amount of time it takes to perform these activities and . . . whether the supplemental pay that employees receive for post-shift activities, including walk time, waiting time, and equipment-cleaning time is sufficient to adequately compensate employees for these activities."  (Filing 103 at CM/ECF p. 41 n.9.)

18

*activity or activities*,

> which occur either prior to the time on any particular *workday* at which such employee commences, or subsequent to the time on any particular *workday* at which he ceases, such *principal activity or activities*.

29 U.S.C. § 254(a), (b) (emphasis added).  "Workday" means "the period between the commencement and completion on the same workday of an employee's principal activity or activities."   29 C.F.R. § 790.6(b).   "Principal activity or activities" encompasses "all activities which are an integral and indispensable part of the principal activities."   *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29-30 (2005) (internal quotations & citations omitted).   "[A]ny activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity.'"   *Id*. at 37.

Cargill argues that because section 203(o) excludes clothes-changing and washing from the definition of "hours worked," those activities are not "principal activities," and therefore cannot mark the beginning or end of the continuous workday so as to make compensable the walking and waiting time that is otherwise excluded as "preliminary and postliminary" by 29 U.S.C. § 254(a).  I disagree.

Section 203(o) simply addresses the *compensability* of time spent donning and doffing protective gear when such time is deemed noncompensable by the express terms of a bona fide collective-bargaining agreement.  In other words, the fact that an employee's union bargains away the employee's right to minimum-wage and overtime compensation for donning and doffing personal protective gear has no relationship to the *nature or character* of the donning and doffing such that these activities cannot be considered "principal activities" under 29 U.S.C. § 254(a).  *See Franklin*, 619 F.3d at 618-20 (compensability under section 203(o) is unrelated to whether activity is "principal activity"; despite fact that donning and doffing uniform and equipment was excluded from "hours worked" under section 203(o) because of custom or practice of nonpayment under bona fide CBA, activity was nevertheless integral and indispensable to performance of job, making it a "principal activity" and possibly entitling plaintiff

19

to payment for post-donning and pre-doffing walking time); *see, e.g., In re Tyson Foods, Inc.*, 694 F. Supp. 2d 1358, 1369-71 (M.D. Ga. 2010) (despite noncompensability of time spent donning and doffing sanitary and safety gear due to practice of non-compensation under bona fide CBA and section 203(o), such tasks may be considered "principal activities" that start continuous workday; therefore, post-donning and pre-doffing walking time may be compensable if donning and doffing is "integral and indispensable" to job, even if donning and doffing time is not compensable under 203(o)); *Andrako v. United States Steel Corp.*, 632 F. Supp. 2d 398, 411-13 (W.D. Pa. 2009) (section 203(o) does not change "principal" nature of donning and doffing activities; while section 203(o) may preclude recovery for time spent performing such activities, it does not affect characterization of such activities as "integral and indispensable" acts that trigger start of continuous workday rule for subsequent activities like post-donning walking time; walking time is neither preliminary nor postliminary to principal activities, but is part of workday itself); *Gatewood v. Koch Foods of Mississippi, LLC*, 569 F. Supp. 2d 687, 702 (S.D. Miss. 2008) (although changing clothes itself was barred from compensability under section 203(o), activities that occur after changing into and out of sanitary gear are not impacted by section 203(o) defense; if jury determined that donning and doffing gear was integral and indispensable, such activity would trigger the continuous workday rule, and might make the walking and waiting time compensable). *But see Hudson v. Butterball, LLC*, No. 08-5071-CV-SW-RED, 2009 WL 3486780 at *4 (W.D. Mo. Oct. 14, 2009) (without analysis, concluding that because time spent donning and doffing was excluded from hours worked under section 203(o), walking time did not follow or precede principal work activity and therefore was not compensable).

There are genuine issues of material fact regarding whether the donning and doffing of PPE at Cargill's Schuyler, Nebraska, plant are "integral and indispensable" to the performance of the plaintiffs' jobs, and are therefore "principal activities" under 29 U.S.C. § 254(a). Therefore, summary judgment is not appropriate on the issue of the compensability of walking and waiting time that follows the plaintiffs' donning of the required PPE and precedes the doffing of that PPE.

### B.  FLSA—Section 259

Cargill next contends that 29 U.S.C. § 259 provides it a complete defense to liability for Plaintiffs' pre- and post-shift "donning, doffing, walking and related claims" because Cargill relied in good faith on the June 6, 2002, and May 14, 2007, published opinion letters from the United States Department of Labor as a basis for implementing and continuing its compensation practices at the Schuyler plant.  (Filing 88  ¶ 3 in 4:09CV3079; Filing 60 ¶ 3 in 8:09CV247; Filing 89 in 4:09CV3079 at CM/ECF p. 33 (capitalization altered).)

Section 259 provides that "no employer shall be subject to any liability . . . for . . . the failure . . . to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the [Administrator of the Wage and Hour Division of the Department of Labor]."  29 U.S.C. § 259(a) & (b)(1).  If this good-faith defense is established, it "shall be a bar to the action."  Id.  The DOL opinion letters described in Section I of this memorandum and order constitute "rulings" within the meaning of section 259.  29 C.F.R. § 790.17(d).

In order to establish this defense, Cargill must prove that (1) its "compensation policies were adopted in reliance on a written interpretation of the FLSA by the agency designated with such authority in the statute"; (2) its "policies were in conformity with that interpretation"; and (3) Cargill "acted in good faith."  *Hultgren v. County of Lancaster*, 913 F.2d 498, 507 (8th Cir. 1990).  "In reliance on" means that the employer "actually relied upon" the administrative ruling.  29 C.F.R. § 790.16(a).  Further, "good faith" is not to be determined "merely from" Cargill's actual state of mind, but objectively—that is, determining whether the employer "acted as a reasonably prudent

man would have acted under the same or similar circumstances." "Good faith" requires that in setting its compensation policies, Cargill "have honesty of intention and no knowledge of circumstances which ought to put [it] upon inquiry." 29 C.F.R. § 790.15(a).

As discussed above, the 2002 DOL opinion concluded that "changing clothes," as used in section 3(o), "applies to the putting on and taking off of the protective safety equipment typically worn in the meat packing industry," including "items worn on the body for covering, protection, or sanitation," thereby relieving employers from an obligation to pay for this "donning and doffing" time if it is expressly excluded from "hours worked" by a bona fide CBA. (Filing 93-3.)  Approximately one year later, however, the Ninth Circuit Court of Appeals issued its decision in *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003), which specifically rejected the 2002 DOL opinion and held that putting on and taking off required personal protective gear as part of employment at a meat-production plant did not constitute "changing clothes" within the meaning of 29 U.S.C. § 203(o), and was therefore compensable work under the FLSA. *Alvarez*, 339 F.3d at 905 n.9.

Despite the conflicting opinions from the DOL and Ninth Circuit Court of Appeals that had developed by 2003, Cargill negotiated with the Union at the Schuyler, Nebraska, plant and entered into the November 5, 2005, collective-bargaining agreement that made donning and doffing protective gear noncompensable. (Filing 90-1 at CM/ECF pp. 2 & 11.)  It was not until April 14, 2006—*after* it had entered into the 2005 CBA with Plaintiffs addressing the compensability of donning and doffing time—that Cargill requested an opinion letter from the DOL (filing 93-6) regarding whether the DOL continued to maintain its 2002 interpretation of 29 U.S.C. § 203(o) in the face of *Alvarez* and whether Cargill may continue to rely on the 2002 DOL opinion letter as the basis for a "good faith" defense under 29 U.S.C. §259.

On these facts, genuine issues of material fact exist on the question whether Cargill relied in "good faith" upon the 2002 and 2007 DOL opinion letters when it

negotiated and continued its compensation policy excluding the donning and doffing of PPE from compensable work.  There are triable issues as to whether Cargill's claimed reliance on the DOL opinion letters despite a court ruling reaching the opposite decision was objectively reasonable and whether Cargill acted as a reasonably prudent employer would have acted under similar circumstances.  Specifically, it is not clear that Cargill had the necessary "honesty of intention and no knowledge of circumstances which ought to put [it] upon inquiry," as is required to establish the good-faith defense under 29 U.S.C. § 259.  29 C.F.R. § 790.15(a). *See, e.g., Henchy v. City of Absecon*, 148 F. Supp. 2d 435, 443 (D.N.J. 2001) (material issues of fact precluded grant of summary judgment on good-faith defense under FLSA; "By its very nature, the question of good faith is fact[-]intensive and implicates a question of credibility for the trier of fact." (internal quotation omitted)).   Therefore, the defendant's motion for partial summary judgment based on 29 U.S.C. § 259 shall be denied.

## C.  Offensive Nonmutual Issue Preclusion

Plaintiffs argue that Cargill is precluded from moving for summary judgment on its defenses under 29 U.S.C. § 203(o) and 29 U.S.C. § 259 based on the doctrine of "offensive nonmutual issue preclusion."[12]   Specifically, Plaintiffs contend that the issues of (1) whether the PPE in use at Cargill's Schuyler, Nebraska, plant constitutes "clothes" under section 203(o), and (2) whether Cargill is excused from non-payment of wages because of its good-faith reliance on DOL letters, have already been litigated in another case in which Cargill was a party and, at one point in that litigation, Cargill

---

[12]The preclusion under this doctrine is "offensive" because the plaintiffs are seeking to foreclose Cargill from litigating an issue that Cargill previously litigated unsuccessfully in an action with another plaintiff.  The preclusion is "nonmutual" because the plaintiffs, who were not parties to the other case, would not have been bound by a judgment in that case.  *See Setter v. A.H. Robins Co., Inc.*, 748 F.2d 1328, 1330 (8th Cir. 1984).

lost on those arguments, *In re Cargill Meat Solutions Wage & Hour Litigation*, 632 F. Supp. 2d 368 (M.D. Pa. 2008).  Because I have already denied Cargill's motion for partial summary judgment based on sections 203(o) and 259 as to everything *except* Plaintiffs' claim for wages for time spent donning and doffing personal protective equipment and gear required to be worn at the defendant's Schuyler, Nebraska, beef-processing plant, I shall consider this argument only as to that claim.

> Before [issue preclusion] will bar relitigation of a factual issue in a subsequent proceeding, the prior determination must satisfy a four-part test:
>
> (1) the issue sought to be precluded must be the same as that involved in the prior action;
>
> (2) the issue must have been litigated in the prior action;
>
> (3) the issue must have been determined by a valid and final judgment; and
>
> (4) the determination must have been essential to the prior judgment.
>
> The party asserting [issue preclusion] bears the burden of proving that a prior decision satisfies all four elements of the test. If the party against whom the earlier decision is being asserted did not have a full and fair opportunity to litigate the issue in question [issue preclusion] does not apply.

*Berger Transfer & Storage v. Central States*, 85 F.3d 1374, 1376-77 (8th Cir. 1996).

In this case, the plaintiffs cannot satisfy the requirement of a final judgment on the merits in the earlier proceeding.  The court in *In re Cargill* denied Cargill's motion for summary judgment as to the plaintiffs' claim for compensation for time spent donning and doffing personal protective equipment, finding that "Cargill has not satisfied its burden to prove, as a matter of law, that the described equipment is 'clothing' under § 203(o)." *In re Cargill*, 632 F. Supp. 2d at 385.  Cargill then moved

to certify this issue, among others, for interlocutory appeal. (Filing 104 at CM/ECF pp. 28-31.)  The district court judge granted the motion as to "[w]hether the term 'clothes' in Section 3(o) of the Fair Labor Standards Act, 29 U.S.C. § 203(o), includes the personal protective equipment, both standard safety equipment and mesh safety equipment, worn by workers in Cargill's meat packing and processing plants." (Filing 104 at CM/ECF p. 54.)  The Third Circuit Court of Appeals denied the petition for interlocutory appeal.  The parties subsequently entered into a settlement agreement that was approved by the district court in an order (not a judgment) finding that the settlement agreement contained "releases . . . by all parties . . . of all claims asserted" and the action was "dismissed as settled." (Filing 104 at CM/ECF pp. 56 & 59.)

Under these circumstances, Plaintiffs have not met their burden to prove that there was a final judgment on the merits regarding the section 203(o) issue in the *In re Cargill* litigation in Pennsylvania.  From the materials submitted to this court regarding that litigation, it appears there was never a "judgment" issued.  "[A] private settlement agreement does not give rise to preclusion if it is not transformed into a judgment. Whatever effect it has on the future relationships between the parties derives from its force as a contract, not from res judicata." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4443, at 251 (2d ed. 2010). Even if a judgment had been entered based on the parties' settlement, "the central characteristic of a consent judgment is that the court has not actually resolved the substance of the issues presented. . . .  The judgment results not from adjudication but from a basically contractual agreement of the parties." *Id*.

Further, it is impossible to tell whether the settlement agreement in the Pennsylvania Cargill litigation was intended to resolve the 203(o) issue for all purposes or was based on some other factor unrelated to the merits of the case. (Filing 104 at CM/ECF pp. 28-59.)  "An estoppel should be reasonably certain, and if there is a serious ambiguity as to what the previous court or jury decided, it is unfair to deny a party its right to contest the merits of the question in the instant case. Collateral estoppel applies only to issues of fact or law necessarily decided." *Setter v. A.H.*

25

*Robins Co., Inc.*, 748 F.2d 1328, 1331 (8th Cir. 1984).

Therefore, Cargill is not precluded from moving for summary judgment on its 29 U.S.C. § 203(o) defense to Plaintiffs' claims for wages for time spent donning and doffing personal protective equipment and gear based on the doctrine of "offensive nonmutual issue preclusion."

**D.  State-Law Claims**

The complaint in 8:09CV247 asserts claims for unpaid wages and overtime wages under the Nebraska Wage and Hour Act, Neb. Rev. Stat. §§ 48-1201 to 48-1209 ("NWHA"), and the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228 to 48-1232 ("NWPCA").[13]  Plaintiffs allege they have "worked many hours without having been paid" for performing activities such as "donning, doffing, and sanitizing sanitary and safety equipment and PPE, obtaining tools, equipment and supplies . . ., 'working' steels and mousetraps . . . ."  If such work had been recorded as paid time, Plaintiffs allege, "at least some Plaintiffs and class members would have worked over forty hours a week and been entitled to be paid one and a half times their regular hourly wages for all time worked in excess of forty hours per week."  (Filing 1 in 8:09CV247 ¶¶ 42 & 44.)

The NWHA requires that employers (with certain exceptions not relevant here) pay employees an hourly minimum wage set forth in the statute.  Neb. Rev. Stat. § 48-1203(1).  Failure to do so is a Class IV misdemeanor, and the employer shall also "be liable to the employees affected in the amount of their unpaid minimum wages."  Neb. Rev. Stat. § 48-1206(2) & (4).  Plaintiffs in this case allege that they have "worked many hours without having been paid by Defendant on a weekly basis."  (Filing 1 in 8:09CV247 ¶ 42.)

---

[13]The complaint in 4:09CV3079 does not allege claims under state law.

The NWPCA requires that employers "pay all wages due its employees on regular days designated by the employer or agreed upon by the employer and employee." Neb. Rev. Stat. § 48-1230. The Act also allows an employee "having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon" to "institute suit for such unpaid wages in the proper court." Neb. Rev. Stat. § 48-1231(1).

In its motion for partial summary judgment, Cargill argues that section 301 of the LMRA, 29 U.S.C. § 185(a), preempts Plaintiffs' claims for additional compensation under state law.[14] Alternatively, Cargill maintains that the state-law claims are without merit because there is no evidence establishing that Cargill "breached any contract or other compensation obligations, or failed to meet its commitment to pay employees the additional minutes of daily compensation as provided by the collective bargaining agreement." (Filing 88 ¶ 5 in 4:09CV3079; Filing 60 ¶ 5 in 8:09CV247.)

### 1. LMRA Preemption

Under section 301 of the LMRA, federal courts have jurisdiction over disputes that arise out of collective-bargaining agreements. 29 U.S.C. § 185(a).[15] Section 301

---

[14]Cargill's motion for partial summary judgment states that the LMRA *and* the FLSA preempt Plaintiffs' state-law wage claims. (Filing 60 ¶ 4 in 8:09CV247.) However, Cargill's brief focuses on LMRA section 301 preemption. Accordingly, I shall only consider the LMRA preemption argument.

[15]Section 185(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 404 (1988). Therefore,

> if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.

*Id*. at 405-06. "In sum, . . . an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." *Id*. at 413. *See also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985) ("The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law . . . .").

The Eighth Circuit Court of Appeals has described this preemption standard this way:

> If resolution of the claim . . . is "substantially dependent" on the terms of the union contract, or if evaluation of the state law claim is "inextricably intertwined with consideration of the terms of the labor contract," it is preempted by § 301. The complete factual background of the case must be examined against all elements of the state law claim, including

28

defenses, to determine whether the terms of the union contract "come into play."

*Vacca v. Viacom Broadcasting of Missouri, Inc.*, 875 F.2d 1337, 1342 (8th Cir. 1989) (employee's breach-of-contract action was preempted by section 301 of the LMRA when issue was whether employer breached side agreement, but court had to interpret CBA to determine whether parties were authorized to enter side agreement) (internal quotations & citations omitted).

Here, Plaintiffs' state-law claims allege that they were not compensated for performing specific activities in the workplace, and if such work had been recorded as paid time, many of the plaintiffs would have been entitled to overtime pay at a rate of time and one-half. These claims require the court to interpret the collective-bargaining agreement to determine whether Plaintiffs are entitled to be paid for performing certain activities (i.e., "donning and doffing" of PPE); wage rates; entitlement to overtime payment; and the calculation of overtime pay. (Filing 90-1 at CM/ECF p. 11 § 6.08.) It is the CBA—not the NWPCA or NWHA—that provides for the payment of overtime wages, making Plaintiffs' claims for such wages necessarily dependent upon the provisions of the CBA, not state law. (Filing 90-1 at CM/ECF p. 12 § 8.01.)

Therefore, Plaintiffs' state-law claims to compel payment of wages due derive from the terms of the CBA itself. This makes Plaintiffs' claims "inextricably intertwined with consideration of the terms of the labor contract" and, therefore, preempted under section 301 of the LMRA. *Vacca*, 875 F.2d at 1342; *Anderson v. Industrial Elec. Reels, Inc.*, 812 F. Supp. 999, 1005 (D. Neb. 1993) (if plaintiff's claim was for benefits like vacation pay which derive from CBA itself—as opposed to claim for attorney fees and penalties for late payment of benefits which derive from state law—"a lawsuit founded upon Nebraska law to compel payment would be pre-empted by § 301(a) of the Labor Management Relations Act"). *See, e.g., Curry v. Kraft Foods Global, Inc.*, No. 10 C 1288, 2010 WL 4338637, at *5-6 (N.D. Ill. Oct. 25, 2010) (in suit to recover wages for time spent donning and doffing protective equipment before

29

and after work shift, claims under state minimum-wage and payment-and-collection acts were preempted by § 301 of LMRA because court would be required to scrutinize and interpret CBA to decide if "work" as defined in CBA included donning and doffing, which implicated federal contract interpretation law; court was also required to decipher CBA's compensation and overtime provisions to arrive at total amount plaintiffs could recover); *Carter v. Tyson Foods, Inc.*, No. 3:08-CV-209, 2009 WL 4790761, at *6-8 (N.D. Ind. Dec. 3, 2009) (in case where employees of meat-packing plant primarily alleged they were not compensated for time spent donning and doffing required safety gear, state wage claim was preempted by § 301 of LMRA because court would need to analyze CBA's "extensive provisions regarding the calculation of compensable time"); *Murray v. Tyson Foods, Inc.*, No. 08-4001, 2009 WL 322241 (C.D. Ill. Feb. 9, 2009) (in suit for wages for time spent preparing, donning, doffing, and sanitizing sanitary equipment for work at pork-processing facility, state minimum-wage law and wage-payment law claims were preempted by § 301 of LMRA where resolution of what constituted "work time" required interpretation of collective-bargaining agreement); *Townsend v. BC Natural Chicken LLC*, 2007 WL 442386, at *5 (E.D. Pa. Feb. 2, 2007) (determining whether plaintiffs' claim that time spent donning and doffing represents "hours worked" was matter of interpretation of CBA, so claim under state wage law was preempted under § 301 of LMRA); *Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912, 935-36 (N.D. Ill. 2003) (holding that state wage law claims based on donning/doffing and gang time theories were preempted by § 301 because they were "predicated on the rights created by the collective bargaining agreements, and depend on the meaning of, or require an interpretation, of the collective bargaining agreements").

### 2.  *Merits of State-Law Claims*

Because Plaintiffs' claims under the Nebraska Wage and Hour Act and the Nebraska Wage Payment and Collection Act are preempted by section 301 of the LMRA, I need not address Cargill's alternative argument that Plaintiffs have failed to establish that Cargill breached any contract or other compensation obligations.

IT IS ORDERED:

1.     The defendant's motion for partial summary judgment (filing 88 in 4:09CV3079; filing 60 in 8:09CV247) is granted as to Plaintiffs' claim for wages for time spent donning and doffing personal protective equipment and gear required to be worn at the defendant's Schuyler, Nebraska, beef-processing plant;

2.     The defendant's motion for partial summary judgment (filing 88 in 4:09CV3079; filing 60 in 8:09CV247) on Plaintiffs' claims seeking additional compensation for pre-shift walking and waiting time that took place before May 2010 in the defendant's Schuyler, Nebraska, fabrication department and before December 2009 in the defendant's Schuyler, Nebraska, slaughter department, is denied;

3.     The defendant's motion for partial summary judgment (filing 88 in 4:09CV3079; filing 60 in 8:09CV247) based on 29 U.S.C. § 259 is denied;

4.     The defendant's motion for partial summary judgment (filing 88 in 4:09CV3079; filing 60 in 8:09CV247) based on preemption is granted, and Plaintiffs' claims under the Nebraska Wage and Hour Act, Neb. Rev. Stat. §§ 48-1201 to 48-1209, and the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228 to 48-1232, are dismissed as preempted under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).

DATED this 12th day of April, 2011.

BY THE COURT:
s/ *Richard G. Kopf*
United States District Judge

31