## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JUAN MARTINEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CARGILL MEAT SOLUTIONS CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)   Case No: 4:09CV3079<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| DALE HAFERLAND, JUAN MUNOZ, KARLA VELASQUEZ, and MANUE CORONA, on behalf of themselves and all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>CARGILL MEAT SOLUTIONS CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 8:09CV00247<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SETTLEMENT AGREEMENT

The parties to the above-captioned civil actions, through their undersigned attorneys, enter into the following Settlement Agreement (hereinafter the "Agreement").

## RECITALS

WHEREAS, on April 23, 2009, plaintiffs Juan Martinez and Antonio Guzman, on behalf of themselves and all other similarly situated individuals at Cargill Meat Solutions Corporation's ("CMSC") Schuyler, Nebraska plant, filed a Fair Labor Standards Act ("FLSA") collective action against CMSC in the United States District Court for the District of Nebraska, in Case No.

4:09CV3079, seeking relief under the FLSA consisting of unpaid wages and unpaid overtime wages, liquidated damages, costs, expenses, attorneys' fees, and injunctive relief (hereinafter "*Martinez*"); and

WHEREAS, on July 22, 2009, plaintiffs Dale Haferland, Juan Munoz, Karla Velasquez, and Manue Corona, individually, and on behalf of all others similarly situated, filed an FLSA collective action and Fed. R. Civ. P. Rule 23 class action against CMSC in the United States District Court for the District of Nebraska, in Case No. 8:09CV00247, seeking relief under the FLSA, the Nebraska Wage and Hour Act ("NWHA"), Neb. Rev. Stat. §§ 48-1201 to 1209; and the Nebraska Wage Payment and Collection Act ("NWPCA"), Neb. Rev. Stat. §§ 48-1228 to 1232, consisting of unpaid wages and unpaid overtime wages, liquidated damages, costs, expenses, attorneys' fees, and injunctive relief (hereinafter *"Haferland"*); and

WHEREAS, on December 30, 2009, the *Martinez* and *Haferland* cases were consolidated; and

WHEREAS, CMSC recognizes that the issues presented in the pending above-described lawsuits are unlikely to be resolved without extensive and costly further litigation that will cause inconvenience, distraction, disruption, delay, and expense disproportionate to the potential benefits of litigation, and has taken into account the risks and uncertain outcome inherent in any litigation; and

WHEREAS, the Parties recognize the expense and difficulties of continued proceedings necessary to prosecute the above-styled lawsuits through trial and subsequent appeals, as well as the risk and uncertainty inherent in any litigation and, in particular, have taken into account the uncertainty of the success or failure of their clients' and putative class members' claims; and

2

WHEREAS, the Settlement Participants, as defined below, have agreed to be bound by the terms of this Agreement; and

WHEREAS, the Named Plaintiffs, the Settlement Participants, and CMSC (collectively the "Parties") have agreed to condition this Agreement upon approval by the Court in the above-captioned lawsuits; and

WHEREAS, the Parties have agreed that if any of the foregoing conditions are not satisfied, the entire settlement and this Agreement shall be null and void;

NOW, THEREFORE, in consideration of the promises, waivers, releases, and agreements set forth herein, the Parties agree that the foregoing recitals are incorporated in and made part of this Agreement by reference, and further agree as follows:

1.    **DEFINITIONS.**   As used in this Agreement, the following terms shall have the following meanings:

a.    "Claims Administrator" means Rust Consulting, Inc., which is the firm the Parties have agreed upon to administer the terms of this settlement.

b.    "Named Plaintiffs" means Juan Martinez, Dale Haferland, Juan Munoz, Karla Velasquez, and Manue Corona.

c.    "*Martinez* Plaintiffs" means Juan Martinez.

d.    "*Haferland* Plaintiffs" means Dale Haferland, Juan Munoz, Karla Velasquez, and Manue Corona.

e.    "Covered Location" for purposes of this Agreement shall mean CMSC's meat packing facility located in Schuyler, Nebraska.

f.    "Released Party" means (i) CMSC; (ii) past or present subsidiaries, divisions, affiliates, parents, predecessors, successors or assigns of CMSC; and (iii) any past or present

3

officers, directors, principals, agents, employees, shareholders, advisors, insurers, attorneys, or representatives of CMSC.

g.      "Relevant Time Period" means the time period commencing on April 23, 2006 and ending on February 28, 2011.

h.      "Settlement Agreement" means this Agreement and all Exhibits attached to it.

i.      "Settlement Class Member" means all current and former hourly production and support employees at the Covered Location during the Relevant Time Period.

j.      "Unclaimed Funds" means the amount of money remaining after calculating the maximum potential distribution for eligible Category A and Category B Settlement Class Members at the Covered Location and subtracting the actual amount paid to Category A and Category B Settlement Class Members. CMSC shall contribute an additional $20,000 to the Unclaimed Funds pool prior to distributing them to Category C Settlement Participants and Category A and Category B Settlement Participants who are employed at the Covered Location as of the first day after the close of the additional 60-day opt-in period described in Paragraph 11 pursuant to this Agreement.

**2.      CONDITIONS PRECEDENT.**   If this Agreement and the settlement terms it memorializes are not approved by the Court in the lawsuits described above, this Agreement shall become null and void.

**3.      NON-ADMISSION.** CMSC has asserted defenses to the claims alleged in the *Martinez* and *Haferland* cases and expressly denies each of the claims asserted against it.   CMSC contends, specifically, that it has complied at all times with the FLSA, Nebraska state laws, and all other applicable wage and hour laws and that it has paid Settlement Class Members all wages and other payments owing to them under applicable federal and state law.   The agreement of

4

CMSC to settle the *Martinez* and *Haferland* cases is not and cannot be construed as an admission of any wrongdoing whatsoever by CMSC and it expressly denies any liability or violation of the FLSA, state law, and/or applicable collective bargaining agreements.

**4.      SETTLEMENT CLASS.**  For settlement purposes only, the Parties agree the *Martinez* and *Haferland* cases may be maintained as an FLSA collective action pursuant to 29 U.S.C. § 216(b), in which the settlement class is defined as all current and former hourly production and support employees of CMSC's facility in Schuyler, Nebraska during the Relevant Time Period.

**5.      WAIVER AND RELEASE BY NAMED PLAINTIFFS AND SETTLEMENT CLASS MEMBERS.**  It is hereby agreed, by and between the Settlement Participants (as defined in Paragraph 7 below) and CMSC, through their respective counsel of record, and subject to the approval of the Court, in consideration of the benefits inuring to the Parties hereto, and without admission of any liability or wrongdoing whatsoever by CMSC, that upon entry of the appropriate Orders and Final Judgments, the Settlement Participants shall be deemed to have released and forever discharged the Released Party from any and all claims arising out of or relating to any alleged violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* the Nebraska Wage and Hour Act ("NWHA"), Neb. Rev. Stat. §§ 48-1201 to 1209; the Nebraska Wage Payment and Collection Act ("NWPCA"), Neb. Rev. Stat. §§ 48-1228 to 1232, or any other federal, state or local law, statute, or regulation, or any collective bargaining agreement, concerning unpaid wages, overtime wages, or the computation or payment of wages or overtime compensation for work performed by Settlement Participants at the Covered Location, whether now known or unknown, that have been, or could have been asserted in the *Martinez* and *Haferland* cases, in any action in any court of competent jurisdiction, or in any federal or state agency administrative proceeding, by any Settlement Participant against the Released Party (the

"Settled Claims"). Notwithstanding the foregoing, Settlement Participants whose employment with CMSC ends on or before the date the Court approves this Agreement shall be deemed to have released the Settled Claims only through the last day of the Settlement Participant's employment with CMSC.

6.    **CONSIDERATION.**  In consideration for the full settlement, waiver, release, discharge, satisfaction, and compromise of all Settled Claims, CMSC agrees that it will: (a) pay Settlement Participants in the manner and pursuant to the procedures set forth in this Agreement; (b) pay reasonable attorneys' fees and litigation costs to counsel for the *Martinez* Plaintiffs in the aggregate amount of $595,000, which will be distributed in the manner and pursuant to the procedures set forth below; (c) pay reasonable attorneys' fees and litigation costs to counsel for the *Haferland* Plaintiffs in the aggregate amount of $226,700, which will be distributed in the manner and pursuant to the procedures set forth below; (d) pay the Claims Administrator to cover the costs of the administration of this settlement; and (e) pay incentive payments to each of the Named Plaintiffs in the amount of $2,000 each.

7.    **SETTLEMENT PARTICIPANTS.**  The "Settlement Participants" will consist of:  (i) Named Plaintiffs in the above described lawsuits; (ii) current or former CMSC employees who have already opted into the *Martinez* and/or *Haferland* cases ("Opt Ins"); and (iii) any individuals whose names appear on the Eligibility List described in Paragraph 8 and who elect to participate in this settlement in the manner and pursuant to the procedures set forth in this Agreement, *i.e.*, by submitting a Consent to Join form.

8.    **NOTICE OF SETTLEMENT AND ELIGIBLITY REQUIREMENTS TO PARTICIPATE IN SETTLEMENT.**

a.       Eligibility List.  Within sixty (60) days after this Agreement has been approved by the Court, CMSC shall provide *Martinez* Plaintiffs' Counsel and *Haferland* Plaintiffs' Counsel and the Claims Administrator with an Eligibility List, Exhibit 1, which shall identify:  (i) all Covered Jobs, and the departments in which those jobs are located, at the Covered Location; (ii) the names and last known addresses of all current and former CMSC employees who CMSC has determined are potentially entitled to compensation in this settlement because they were employed in a Covered Job during any full workweek during the Relevant Time Period at the Covered Location; and (iii) the amount of Back Pay to which each individual is entitled under this Agreement and the basis for that calculation (consisting of the respective full weeks each individual worked in one or more of the Covered Jobs).  CMSC shall also provide the records upon which CMSC relied in determining the individuals appearing on the Eligibility List and calculating the amounts due each individual.  The Claims Administrator shall have twenty (20) days from receipt of the Eligibility List and supporting documentation to verify the accuracy of any aspect of the Eligibility List and calculations of amounts due each individual.  Once the Eligibility List and calculation of amounts due each individual has been finalized, it shall be used by the Claims Administrator when mailing claim forms to the Settlement Participants.

b.       Notice of Settlement to Opt Ins.  Within ten (10) days of the finalization of the Eligibility List, the Claims Administrator shall mail to those Settlement Class Members who previously filed consent forms to become Opt In Plaintiffs in the *Martinez* case the following: (i) a document entitled "Notice of Settlement," substantially in the form attached hereto as Exhibit 2 in both English and Spanish; and (ii) a document entitled "Computation of Your Settlement," substantially in the form attached hereto as Exhibit 4 in both English and Spanish. Within ten (10) days of the finalization of the Eligibility List, the Claims Administrator shall mail to those

7

Settlement Class Members who previously filed consent forms to become Opt In Plaintiffs in *Haferland* the following: (i) a document entitled "Notice of Settlement," substantially in the form attached hereto as Exhibit 3 in both English and Spanish; and (ii) a document entitled "Computation of Your Settlement," substantially in the form attached hereto as Exhibit 4 in both English and Spanish. These individuals shall be included among the Settlement Participants.

      c.      <u>Notice of Settlement to Individuals Whose Names Appear on the Eligibility List and Who Are Not Among the Opt Ins</u>. Within twenty (20) days of the finalization of the Eligibility List, the Claims Administrator shall mail to all individuals whose names appear on the Eligibility List but who are not among the current Opt Ins the following: (i) a document entitled "Computation of Your Settlement," substantially in the form attached hereto as Exhibit 4 in both English and Spanish; (ii) a document entitled "Notice of Settlement and Opportunity to Join Action," substantially in the form attached hereto as Exhibit 5 in both English and Spanish; (iii) a document entitled "Consent to Join Suit as Party Plaintiff and Participate in the Court-Approved Settlement" (the "Consent to Join Form"), substantially in the form attached hereto as Exhibit 6 in both English and Spanish; and (iv) a postage-paid return envelope addressed to the Claims Administrator. These individuals shall become Settlement Participants by completing the Consent to Join Form and returning it to the Claims Administrator.

      d.      <u>Undelivered Mailings</u>. Within forty (40) days of the finalization of the Eligibility List, the Claims Administrator shall make a reasonable and good faith effort to determine valid mailing addresses for all Settlement Class Members who previously filed consent forms to become Opt In Plaintiffs in *Martinez* whose notice of settlement mailings are returned as undeliverable. Within forty (40) days of the finalization of the Eligibility List, the Claims Administrator shall make a reasonable and good faith effort to determine valid mailing addresses

for all Settlement Class Members who previously filed consent forms to become Opt In Plaintiffs in *Haferland* and Settlement Class Members whose names appear on the Eligibility List and who are not among the opt ins whose notice of settlement mailings are returned as undeliverable. The Claims Administrator shall make a reasonable and good faith effort to determine valid mailing addresses for such individuals. Within fifty (50) days of the finalization of the Eligibility List, the Claims Administrator shall re-send the notice of settlement mailings to all such individuals for whom revised addresses have been obtained. It is agreed that the time period for responding to notice of settlement mailings shall be tolled for affected individuals during the time period provided in this paragraph.

        e.     <u>Posting of Announcement of Settlement</u>. CMSC shall post an announcement in both English and Spanish concerning the settlement at the Covered Location on employee bulletin boards customarily used for posting similar information, for a period of time commencing thirty (30) days from the finalization of the Eligibility List until the deadline has elapsed for individuals to participate in this settlement. The announcement, the language of which shall be negotiated between the parties, shall briefly describe the settlement. CMSC additionally agrees that it will instruct all of the managers and supervisors at the Covered Location that they shall not in any way discourage any individuals on the Eligibility List from participating in the settlement or receiving the back pay amounts which they are eligible to receive under this settlement.

**9.**    **SETTLEMENT POOLS.**    For purposes of calculating back pay for Settlement Participants, the Parties agree that Settlement Participants shall be divided into three categories as follows:

a.   **CATEGORY A**: All jobs on the Covered Jobs list that are currently categorized in the **Maximum Equipment Group** for purposes of supplemental pay at the Covered Location.  Maximum Equipment Group jobs include those in which the incumbent wore one or more of the following items: mesh body suit, mesh apron, front mesh, back mesh, mesh leggings, or mesh sleeve, in performing his or her job duties during the applicable Relevant Time Period.  Settlement Participants in the Maximum Equipment Group will be paid $6.00 for every full week in which they worked in a Covered Job during the applicable Relevant Time Period. If a Settlement Participant worked in a Covered Job in the Maximum Equipment Group for only a portion of the Relevant Time Period, he/she will receive a payment based upon the number of full weeks he/she worked in a Covered Job. Fifty percent of each payment will be allocated as W-2 income and subject to withholdings required by law; the remaining fifty percent will be allocated as non-W-2 income.

b.   **CATEGORY B**: All jobs on the Covered Jobs list that are currently categorized in the **Minimum Equipment Group** for purposes of supplemental pay at the Covered Location.  Minimum Equipment Group jobs include those in which the incumbent wore one or more of the following items (but did not wear any of the items listed in Category A above): mesh gloves, belly guard, shin guards, face guard, plastic arm guards, whizzard gloves, whizzard sleeves, rubber apron, scabbard for knives, hand guards and rubber gloves worn over mesh, in performing his or her job duties during the applicable Relevant Time Period. Settlement Participants in the Minimum Equipment Group will be paid $4.00 for

every full week in which they worked in a Covered Job during the Relevant Time Period. If a Settlement Participant worked in a Covered Job in the Minimum Equipment Group for only a portion of the Relevant Time Period, he/she will receive a payment based upon the number of full weeks he/she worked in a Covered Job. Fifty percent of each payment will be allocated as W-2 income and subject to withholdings required by law; the remaining fifty percent will be allocated as non-W-2 income.

c.      **CATEGORY C**: All jobs on the Covered Jobs list in which the incumbent was not required to wear any of the items identified in Category A or Category B. Category C shall be known as the "Standard Equipment Group." Category C employees currently do not receive any supplemental pay at the Covered Location. If a Settlement Participant worked in a Covered Job in the Standard Equipment Group during the applicable Relevant Time Period, he/she shall receive a *pro rata* share of the aggregated Unclaimed Funds, as defined in Paragraph 1(j) above, based on the number of full weeks the Settlement Participant worked in a Standard Equipment Group Covered Job during the applicable Relevant Time Period. Fifty percent of each payment will be allocated as W-2 income and subject to withholdings required by law; the remaining fifty percent will be allocated as non-W-2 income.

d.      Any Settlement Participant who receives a distribution from the Maximum Equipment Group or the Minimum Equipment Group, and is employed at a Covered Location as of the first day after the close of the additional 60-day Opt In period described in Paragraph 11, shall also receive a pro rata share of the

11

Unclaimed Funds distribution based on the number of full weeks the Settlement Participant worked in a Covered Job during the applicable Relevant Time Period.

10.  **RESOLVING DISPUTES BY OPT INS.** If a Settlement Class Member disagrees with the number of work weeks or Category pre-printed on his or her Computation of Your Settlement form, the Settlement Class Member will be instructed to and must write on the Computation of Your Settlement form the correct number of weeks worked and/or correct Category during the applicable Relevant Time Period and provide documents (*e.g.*, check stubs or personnel records) evidencing his or her claim to the extent such documents are in his or her possession. For settlement purposes only, the Parties have assumed that the weeks worked by each Settlement Class Member and their Category is a record that CMSC accurately maintained, was accurately included in the Eligibility List and was correctly and accurately printed by the Claims Administrator on each Settlement Class Member's Computation of Your Settlement form. This information shall be presumed to be accurate unless the Settlement Class Member informs his or her Union Steward, Plaintiffs' Counsel or the Claims Administrator of any mistakes. In the event of any dispute over an individual's work weeks or Category, the Parties shall meet and confer in good faith in an attempt to resolve the dispute. If the dispute cannot be resolved, it shall be submitted to the Court for a final determination as to the number of weeks worked during the Relevant Time Period and/or Category for that individual.

11.  **ELIGIBILITY TO PARTICIPATE IN SETTLEMENT.** In order to participate in the settlement proceeds, a Settlement Class Member must (a) be an existing Named or Opt In Plaintiff in one of the above described lawsuits, or (b) timely consent to become an Opt In Plaintiff. To ensure that all Settlement Class Members are given an opportunity to become Opt In Plaintiffs, the parties agree that they will file an agreed motion to extend the time in which

individuals may file consents to become Opt In Plaintiffs for a period of sixty (60) days following the date that Settlement Class Members are sent or given the Notice of Settlement.

12.   **PAYMENT OF SETTLEMENT.**   Settlement Participants will be sent or given their settlement checks within forty (40) days after the close of the extended Opt In period described in Paragraph 11.

13.   **SETTLEMENT CHECKS.**   Checks issued to Settlement Participants will be made payable to the Settlement Participant.   On the reverse of each settlement check will be printed above the space for endorsement a statement in substance that, by cashing the check, the Settlement Participant fully and finally waives all Settled Claims against CMSC pursuant to this Agreement ("Waiver Warning").   Each settlement check also will bear a legend directing the payer's bank not to accept the settlement check for payment if: (a) the settlement check is unsigned; or (b) the waiver warning, or any part of it, has been altered or deleted.

14.   **RELEASE LANGUAGE ON SETTLEMENT CHECKS.**   CMSC shall be entitled to include the following release language on the back of each settlement check:

> My signature or negotiation of this check constitutes a full and complete release of Cargill Meat Solutions Corporation, its parent, affiliated and related entities, and its officers and employees, by me for any and all claims I agreed to settle by submitting a claim form to participate in the Settlement Agreement dated _____, 2011 up to and including the date of Court approval of the settlement, as well as my acknowledgment that I accept this check as payment in full for all Fair Labor Standards Act and state law claims alleged on my behalf in the lawsuits covered by the Settlement Agreement.

13

15.     **UNCASHED SETTLEMENT CHECKS.** If any settlement checks are uncashed within one hundred eighty (180) days following the most recent mailing or providing of settlement checks, they will be canceled and voided. By failing timely to cash their checks, the Settlement Participants will be deemed to have waived irrevocably any rights in or claim to their share of the settlement proceeds. The settlement checks will be printed to so advise Settlement Participants and the cover letter accompanying the checks will so advise the Settlement Participants, in both English and Spanish.

16.     **ATTORNEY FEES AND COSTS OF ADMINISTRATION.**

a.     Plaintiffs' Attorney Fees and Costs. Within thirty (30) days after this Agreement has been approved by the Court, CMSC shall distribute the total amount of $595,000 in attorney fees, costs and expenses to the *Martinez* Plaintiffs' Counsel and $231,700 in attorney fees, costs and expenses to the *Haferland* Plaintiffs' Counsel pursuant to Counsel's written instructions. It is agreed and understood between the Parties that such sums cover the entirety of Plaintiffs' attorneys' fees, costs and expenses expended in furtherance of or related to any of the Settled Claims involving current or former employees at the Covered Location. The payment to Settlement Participants of proceeds described in this Agreement, is not contingent upon either the *Martinez* Plaintiffs' counsel's receipt of the entire $595,000 payment or the *Haferland* Plaintiffs' counsel's receipt of the entire $231,700 payment described in this paragraph, and the Courts' disapproval of any portion of such payment to Plaintiffs' counsel shall not be grounds for voiding other provisions of this Agreement. The attorney fees agreed upon in this paragraph will compensate Plaintiffs' Counsel for work already performed in the *Martinez/Haferland* lawsuits and all of the work remaining to be performed in this matter, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the

14

Settlement is fairly administered and implemented and obtaining dismissal of the pending lawsuits. Payment of the attorneys' fees and costs agreed-upon and approved by the Court shall constitute full satisfaction of CMSC's obligations to pay amounts to any person, attorney or law firm for attorneys' fees, expenses or costs in the lawsuits described above, and shall relieve CMSC from any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses and/or costs to which any of them may claim to be entitled on behalf of the Named Plaintiffs and/or the Settlement Class. Plaintiffs' Counsel further agrees that any further allocation of fees between or among Plaintiffs' Counsel and any other attorney representing a Named Plaintiff and/or the Settlement Class shall be the sole responsibility of Plaintiffs' Counsel, and Plaintiffs' Counsel agrees to indemnify and hold harmless CMSC from any claim or liability by any other party claiming or seeking to claim any attorney fees or costs. A Form 1099 shall be provided to Plaintiffs' Counsel for the payments made to them. Plaintiffs' Counsel shall be solely and legally responsible to pay any and all applicable taxes on the payment made to Plaintiffs' Counsel. Each of Plaintiffs' Counsel agrees to indemnify and hold harmless CMSC from any claim or liability for taxes, penalties or interest for which Plaintiffs' Counsel is responsible as a result of the specific payment made to them.

b.  Costs of Administration.  All fees, costs, expenses and other claims administration by the Claims Administrator (Rust Consulting, Inc.) shall be paid as set forth in this Agreement. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the settlement.

c.  Incentive Payments.  CMSC shall pay incentive payments to each of the Named Plaintiffs in the amount of $2,000 each, and shall issue a Form 1099 for such payments.

15

17. **FINAL JUDGMENT AND ORDERS OF DISMISSAL.** As soon as practicable after the issuance of the settlement checks, unless such time is extended by agreement of the parties or by the Court, the Claims Administrator will certify that all amounts under the settlement, less any amounts withheld or required to be deducted by law, have been paid, and the parties jointly will move the Court for entry of an Order of Dismissal of all Settled Claims involving the Covered Location.

18. **REPORT ON SETTLEMENT ADMINISTRATION.** The Claims Administrator shall keep counsel for the Parties apprised of all settlement distributions. Upon completion of administration of the settlement, the Claims Administrator shall provide written certification of such completion and provide proof of payment to counsel for the Parties. The Claims Administrator also shall furnish counsel for the Parties upon request with a report showing the names, amounts and dates of each payment.

19. **PROCEEDINGS STAYED.** The Parties agree to hold all proceedings in the lawsuits described above, except such proceedings as may be necessary to implement and complete this Agreement, in abeyance pending final approval of this Agreement by the Court.

20. **AMENDMENT OR WAIVER ONLY IN WRITING.** This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest. No rights hereunder may be waived except in writing.

21. **ENTIRE AGREEMENT.** This Agreement and any attached Exhibits constitute the entire agreement between the Parties relating to the Settlement and transaction contemplated thereby. All prior or contemporaneous agreements, understandings and statements, whether oral or written, and whether by a party or its counsel, are merged herein. No oral or written representations, warranties or inducements have been made to any party concerning this

Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents.

**22.    AUTHORIZATION TO EXECUTE AGREEMENT AND EFFECTUATE SETTLEMENT AND AGREEMENT TO COOPERATE.** Counsel for all Parties warrant and represent that they are expressly authorized by the Parties whom they represent to negotiate this Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate the terms hereof, and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their respective counsel will cooperate with each other and use their best efforts to effect the implementation of the Agreement. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Agreement, the Parties may seek the assistance of the applicable Court to resolve such disagreement.

**23.    RETENTION OF JURISDICTION FOR DISPUTE RESOLUTION.** Unless otherwise ordered, the Court in the above-described lawsuits shall retain jurisdiction over the Parties and, if necessary, shall adjudicate any disputes involving the application or interpretation of the terms and provisions of this Agreement.

**24.    SUCCESSORS AND ASSIGNS.** This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Released Parties and the Parties, as previously defined.

**25.    GOVERNING LAW.** All terms of this Agreement and the Exhibits hereto shall be governed by and interpreted according to the laws of the State of Nebraska, where applicable, and the United States of America, where applicable.

17

**26.**  **COUNTERPARTS.**  This Agreement may be executed in one or more counterparts and by facsimile.  All executed copies of this Agreement, and photocopies thereof (including facsimile and/or emailed copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

**27.**  **EXHIBITS.**  The terms of this Agreement include the terms set forth in the attached Exhibits, which are incorporated by this reference as though fully set forth herein.  The Exhibits to this Agreement are an integral part of the Agreement.  Unless specifically provided otherwise in the Exhibits to this Agreement, in the event of any conflict between the Agreement and the Exhibits, the terms of the Agreement shall control.

**28.**  **CONSTRUCTION.**  The Parties believe the terms of the settlement as set forth in this Agreement are a fair, adequate and reasonable settlement of the lawsuits described in the Recitals above and have arrived at this Agreement in arms-length negotiations, taking into account all relevant factors, present and potential.  This Agreement has been drafted jointly by counsel for the Parties.  Hence, in any construction or interpretation of this Agreement, the same shall not be construed against any of the Parties.

**29.**  **EXTENSIONS OF TIME.**  The Parties may agree to reasonable extensions of time to carry out any of the provisions of this Agreement and the non-requesting parties' consent to an extension will not be unreasonably denied.

IN WITNESS WHEREOF, the Parties, by their counsel, have executed this Agreement, intending to be legally bound thereby.

| _s/ Brian P. McCafferty_ | _s/ Shanon J. Carson_ | _s/ Joseph E. Tilson_ |
|---|---|---|
| Brian P. McCafferty | Todd M. Schneider | Joseph E. Tilson |
| Kenney & McCafferty PC | Carolyn H. Cottrell | Jeremy J. Glenn |
| 1787 Sentry Park West | SCHNEIDER WALLACE | MECKLER BULGER TILSON |
| Building 18, Suite 410 | COTTRELL BRAYTON | MARICK & PEARSON, LLP |

Blue Bell, PA 19422
Tel: (215) 367-4333

Michael Hamilton
PROVOST, UMPHREY LAW
FIRM - NASHVILLE
2021 Richard Jones Road Ste 300
Nashville, TN 37215
Tel: (615) 242-0199
Fax: (615) 256-5922

Roger K. Doolittle
DOOLITTLE LAW FIRM
460 Briarwood Drive
Suite 500
Jackson, MS 39206
Tel: (601) 957-9777
Fax: (601) 957-9779

Brandon J. Lauria
Eric Young
EGAN YOUNG
526 E. Township Line Road,
Suite 100
Blue Bell, Pennsylvania 19422
Tel: (215) 367-5151
Fax: (215) 367-5143

**Attorneys for the Haferland
Plaintiffs**

KONECKY LLP
180 Montgomery St., Ste 2000
San Francisco, CA 94104
Tel: (415) 421-7100
Fax: (415) 421-7105

Christopher P. Welsh, #22279
WELSH & WELSH, P.C.
9290 West Dodge Road
Suite 100 The Mark
Omaha, Nebraska 68114
Tel: (402) 384-8160
Fax: (402) 384-8211

Shanon J. Carson
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-4656
Fax: (215) 875-4604

Philip A. Downey
P.O. Box 736
Unionville, PA 19375
Tel: (610) 324-2848
Fax: (610) 347-1073

**Attorneys for the Martinez
Plaintiffs**

123 N. Wacker Dr., Ste 1800
Chicago, IL 60606
Tel: (312) 474-7900
Fax: (312) 474-7898

Gail S. Perry, #17569
BAYLOR, EVNEN, CURTISS,
GRIMIT & WITT, LLP
Wells Fargo Center
1248 "O" Street, Suite 600
Lincoln, NE 68508
Tel: (402) 475-1075
Fax: (402) 475-9515

**Attorneys for Defendant**

# Exhibit 1

## EXHIBIT 1

## **ELIGIBLITY LIST**

- o LIST OF COVERED JOBS

- o NAMES AND LAST KNOWN ADDRESSES OF CURRENT AND
  FORMER PRODUCTION AND SUPPORT EMPLOYEES WHO
  WORKED IN COVERED JOBS DURING THE RELEVANT TIME
  PERIOD AT THE COVERED LOCATION

- o THE AMOUNT OF BACK PAY TO WHICH EACH INDIVIDUAL
  MAY BE ENTITLED UNDER THE SETTLEMENT AGREEMENT

Exhibit 2

**EXHIBIT 2**

**NOTICE OF SETTLEMENT**

TO:   CURRENT AND FORMER EMPLOYEES OF CARGILL MEAT SOLUTIONS CORPORATION'S ("CMSC") SCHUYLER, NEBRASKA PLANT WHO PREVIOUSLY OPTED IN TO THE <u>MARTINEZ, et al. v. CARGILL MEAT SOLUTIONS CORPORATION</u> ACTION

RE:   SETTLEMENT OF WAGE CLAIMS AGAINST CMSC FOR DONNING, DOFFING, WALK TIME AND WASHING SAFETY EQUIPMENT AND ALL RELATED CLAIMS FOR RELIEF

## I. INTRODUCTION

This Notice is to inform you that Cargill Meat Solutions Corporation ("CMSC") has agreed to settle the wage claim lawsuit that was filed by certain employees at CMSC's Schuyler, Nebraska plant. You previously joined this lawsuit by completing a consent to join form that was filed with the federal court. This Notice explains how your monetary share of the settlement was calculated. The settlement amount to which CMSC has agreed you are entitled is set forth in the enclosed form entitled "Computation of Your Settlement."

If you are uncertain or dispute whether you previously joined this lawsuit, you may verify whether you are already a party by contacting the Court-appointed Claims Administrator, Rust Consulting, Inc. at the following toll free number: _____.

## II. DESCRIPTION OF THE LAWSUIT

On April 23, 2009, plaintiffs Juan Martinez and Antonio Guzman, on behalf of themselves and all other similarly situated individuals at CMSC's Schuyler, Nebraska plant, filed a lawsuit against CMSC in the United States District Court for the District of Nebraska (Case No. 4:09CV3079). On July 22, 2009, plaintiffs Dale Haferland, Juan Munoz, Karla Velasquez, and Manue Corona, individually and on behalf of all others similarly situated, also filed a lawsuit against CMSC in the United States District Court for the District of Nebraska (Case No. 8:09CV00247). On December 30, 2009, the *Martinez* and *Haferland* cases were consolidated by the Court.

The main claim in the lawsuit is that CMSC violated federal and state law by failing to pay certain employees for the time they spend putting on, taking off and washing safety equipment they are required to wear in performing their job duties, as well as for walk time to and from their work stations after donning their safety equipment. You previously consented to join and become a party in this lawsuit.

CMSC has denied and continues to deny that it has violated federal or state wage claim laws in any respect. Furthermore, there has been no court decision of any wrongdoing by CMSC. To avoid costly, disruptive, and time consuming litigation, and without admitting any wrongdoing, CMSC negotiated and agreed to a settlement of the lawsuit with the plaintiffs' lawyers.

## III. TERMS OF THE SETTLEMENT AGREEMENT

The Settlement Agreement has been approved by the United States District Court for the District of Nebraska. Based on the settlement, you are eligible to receive a payment established as part of the Settlement Agreement. Your payment amount is described in more detail in the enclosed form entitled

"Computation of Your Settlement," but this notice will provide you with a more general explanation of how your payment amount was calculated.

Your payment amount was calculated based on the duration of time that you have worked at the Schuyler plant and the job you held or now hold. If you worked in a job that is currently categorized in the **Maximum Equipment Group** for purposes of supplemental pay, you will be paid $6.00 for every full week in which you worked in a Maximum Equipment Group Covered Job during the Relevant Time Period. If you worked in a job that is currently categorized in the **Minimum Equipment Group** for purposes of supplemental pay you will be paid $4.00 for every full week in which you worked in a Minimum Equipment Group Covered Job during the Relevant Time Period. If you worked in a job that is currently categorized in the **Standard Equipment Group** and does not receive supplemental pay, you will receive a pro rata share of the unclaimed settlement funds based on the number of full weeks you worked in a Standard Equipment Group Covered Job during the Relevant Time Period, which amount will be determined at a future date.

The Relevant Time Period is April 23, 2006 to February 28, 2011. If you worked in a Covered Job in the Maximum Equipment Group throughout the Relevant Time Period at the Schuyler plant, you can receive a maximum payment of $_____, less applicable tax withholding. If you worked in a Covered Job in the Minimum Equipment Group throughout the Relevant Time Period at the Schuyler plant, you can receive a maximum payment of $____, less applicable tax withholding. If you worked only a portion of the Relevant Time Period in a Covered Job, then you will receive a pro rata portion of the maximum payment.

## IV.  RIGHTS AND OPTIONS OF ELIGIBLE SETTLEMENT PARTICIPANTS

The enclosed form entitled "Computation of Your Settlement" describes the amount of back pay you may be eligible to receive based upon the amount of time you worked at CMSC in one of the Covered Jobs. Because you have already joined this lawsuit, you do not need to do anything to receive your settlement other than to **make sure you inform the Claims Administrator of any change of address where your settlement check should be sent**.

## V.  BINDING EFFECT

At the appropriate time, you will be provided with a settlement check in the amount of your respective settlement. The checks will be in full settlement of any and all known and unknown claims covered by the settlement agreement, and will so state. State and federal employment taxes, including FICA and FUTA will be withheld from fifty percent of the payment in your settlement check, and you will receive an itemized listing of the deductions. You should cash your settlement check as soon possible but in any event in no less than 180 days from when you receive it. Whether or not you cash the settlement check, the settlement will be binding upon all Settlement Participants.

The parties anticipate that settlement checks will be distributed on or before _____.

## VI.  ATTORNEY FEES AND COSTS

As part of the Settlement Agreement, CMSC has agreed to pay your attorneys' fees and litigation costs and this payment has been approved by the United States District Court as fair and reasonable. This payment does not affect the amount of your individual settlement and you will not pay your lawyers anything out of your individual settlement.

## VII. **FURTHER INFORMATION**

If you have any questions about the settlement agreement you may contact:

Todd M. Schneider
Carolyn H. Cottrell
SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP
180 Montgomery St., Ste 2000
San Francisco, CA 94104
Tel: (415) 421-7100
Fax: (415) 421-7105

Christopher P. Welsh, #22279
WELSH & WELSH, P.C.
9290 West Dodge Road
Suite 100 The Mark
Omaha, Nebraska 68114
Tel: (402) 384-8160
Fax: (402) 384-8211

Shanon J. Carson
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-4656
Fax: (215) 875-4604

Philip A. Downey
P.O. Box 736
Unionville, PA 19375
Tel: (610) 324-2848
Fax: (610) 347-1073

**Do not write or call the Court involved in the lawsuit because, in approving the settlement agreement, the Court has expressed no opinion regarding the merits of plaintiffs' claims or CMSC's defenses to those claims.**

## VIII. **NO RETALIATION OR DISCRIMINATION**

Federal law prohibits CMSC from discharging you or in any other manner discriminating against you because you have exercised your right under the federal and state law to participate in this settlement. CMSC also has instructed its managers and supervisors that they are prohibited from engaging in any actions or conduct designed to discourage current or former employees from joining the lawsuit or participating in the settlement proceeds.

## IX. **ADDRESS CHANGES**

It is your responsibility to keep the Claims Administrator informed of your correct mailing address. Please provide any change of address with your signature, social security number, date of birth, former address, and new address to: Rust Consulting, Inc. at the following toll free number: _____.

Exhibit 3

## EXHIBIT 3

## NOTICE OF SETTLEMENT

TO:    CURRENT AND FORMER EMPLOYEES OF CARGILL MEAT SOLUTIONS CORPORATION'S ("CMSC") SCHUYLER, NEBRASKA PLANT WHO PREVIOUSLY OPTED IN TO THE HAFERLAND, et al. v. CARGILL MEAT SOLUTIONS CORPORATION ACTION

RE:    SETTLEMENT OF WAGE CLAIMS AGAINST CARGILL MEAT SOLUTIONS CORPORATION FOR DONNING, DOFFING, WALK TIME AND WASHING SAFETY EQUIPMENT AND ALL RELATED CLAIMS FOR RELIEF

## I. INTRODUCTION

This Notice is to inform you that Cargill Meat Solutions Corporation ("CMSC") has agreed to settle the wage claim lawsuit that was filed by certain employees at CMSC's Schuyler, Nebraska plant. You previously joined this lawsuit by completing a consent to join form that was filed with the federal court. This Notice explains how your monetary share of the settlement was calculated. The settlement amount to which CMSC has agreed you are entitled is set forth in the enclosed form entitled "Computation of Your Settlement."

If you are uncertain or dispute whether you previously joined this lawsuit, you may verify whether you are already a party by contacting the Court-appointed Claims Administrator, Rust Consulting, Inc. at the following toll free number: _____.

## II. DESCRIPTION OF THE LAWSUIT

On July 22, 2009, plaintiffs Dale Haferland, Juan Munoz, Karla Velasquez, and Manue Corona, individually and on behalf of all others similarly situated, filed a lawsuit against CMSC in the United States District Court for the District of Nebraska (Case No. 8:09CV00247). On April 23, 2009, plaintiffs Juan Martinez and Antonio Guzman, on behalf of themselves and all other similarly situated individuals at CMSC's Schuyler, Nebraska plant, filed a lawsuit against CMSC in the United States District Court for the District of Nebraska (Case No. 4:09CV3079). On December 30, 2009, the *Martinez* and *Haferland* cases were consolidated by the Court.

The main claim in the lawsuit is that CMSC violated federal and state law by failing to pay certain employees for the time they spent putting on, taking off and washing safety equipment they are required to wear in performing their job duties, as well as for walk time to and from their work stations after donning their safety equipment. You previously consented to join and become a party in this lawsuit.

CMSC has denied and continues to deny that it has violated federal or state wage claim laws in any respect. Furthermore, there has been no court decision of any wrongdoing by CMSC. To avoid costly, disruptive, and time consuming litigation, and without admitting any wrongdoing, CMSC negotiated and agreed to a settlement of the lawsuit with the plaintiffs' lawyers.

## III. TERMS OF THE SETTLEMENT AGREEMENT

The Settlement Agreement has been approved by the United States District Court for the District of Nebraska. Based on the settlement, you are eligible to receive a payment established as part of the

Settlement Agreement. Your payment amount is described in more detail in the enclosed form entitled "Computation of Your Settlement," but this notice will provide you with a more general explanation of how your payment amount was calculated.

Your payment amount was calculated based on the duration of time that you have worked at the Schuyler plant and the job you held or now hold. If you worked in a job that is currently categorized in the **Maximum Equipment Group** for purposes of supplemental pay, you will be paid $6.00 for every full week in which you worked in a Maximum Equipment Group Covered Job during the Relevant Time Period. If you worked in a job that is currently categorized in the **Minimum Equipment Group** for purposes of supplemental pay you will be paid $4.00 for every full week in which you worked in a Minimum Equipment Group Covered Job during the Relevant Time Period. If you worked in a job that is currently categorized in the **Standard Equipment Group** and does not receive supplemental pay, you will receive a pro rata share of the unclaimed settlement funds based on the number of full weeks you worked in a Standard Equipment Group Covered Job during the Relevant Time Period, which amount will be determined at a future date.

The Relevant Time Period is April 23, 2006 to February 28, 2011. If you worked in a Covered Job in the Maximum Equipment Group throughout the Relevant Time Period at the Schuyler plant, you can receive a maximum payment of $_____, less applicable tax withholding. If you worked in a Covered Job in the Minimum Equipment Group throughout the Relevant Time Period at the Schuyler plant, you can receive a maximum payment of $____, less applicable tax withholding. If you worked only a portion of the Relevant Time Period in a Covered Job, then you will receive a pro rata portion of the maximum payment.

## IV. RIGHTS AND OPTIONS OF ELIGIBLE SETTLEMENT PARTICIPANTS

The enclosed form entitled "Computation of Your Settlement" describes the amount of back pay you may be eligible to receive based upon the amount of time you worked at CMSC in one of the Covered Jobs. Because you have already joined this lawsuit, you do not need to do anything to receive your settlement other than to **make sure you inform the Claims Administrator of any change of address where your settlement check should be sent**.

## V. BINDING EFFECT

At the appropriate time, you will be provided with a settlement check in the amount of your respective settlement. The checks will be in full settlement of any and all known and unknown claims covered by the settlement agreement, and will so state. State and federal employment taxes, including FICA and FUTA will be withheld from fifty percent of the payment in your settlement check, and you will receive an itemized listing of the deductions. You should cash your settlement check as soon possible but in any event in no less than 180 days from when you receive it. Whether or not you cash the settlement check, the settlement will be binding upon all Settlement Participants.

The parties anticipate that settlement checks will be distributed on or before _____.

## VI. ATTORNEY FEES AND COSTS

As part of the Settlement Agreement, CMSC has agreed to pay your attorneys' fees and litigation costs and this payment has been approved by the United States District Court as fair and reasonable. This payment does not affect the amount of your individual settlement and you will not pay your lawyers anything out of your individual settlement.

2

## VII. **FURTHER INFORMATION**

If you have any questions about the settlement agreement you may contact:

BRIAN P. MCCAFFERTY
Kenney & McCafferty PC
1787 Sentry Park West
Building 18, Suite 410
Blue Bell, PA 19422
(215) 367-4333

MICHAEL HAMILTON
Provost Umphrey Law Firm, LLP
2021 Richard Jones Road
Suite 300
Nashville, TN 37215
Phone: (615) 242-0199

ROGER K. DOOLITTLE
460 Briarwood Drive
Suite 500
Jackson, MS 39206-3060
Phone: (601) 957-9777

ERIC L. YOUNG
BRANDON LAURIA
Egan Young Law Firm
526 Township Line Road, Suite 100
Blue Bell, PA 19422
Phone: (215) 367-5151

**Do not write or call the Court involved in the lawsuit because, in approving the settlement agreement, the Court has expressed no opinion regarding the merits of plaintiffs' claims or CMSC's defenses to those claims.**

## VIII. **NO RETALIATION OR DISCRIMINATION**

Federal law prohibits CMSC from discharging you or in any other manner discriminating against you because you have exercised your right under the federal and state law to participate in this settlement. CMSC also has instructed its managers and supervisors that they are prohibited from engaging in any actions or conduct designed to discourage current or former employees from joining the lawsuit or participating in the settlement proceeds.

## IX. **ADDRESS CHANGES**

It is your responsibility to keep the Claims Administrator apprised of your correct mailing address. Please provide any change of address with your signature, social security number, date of birth, former address, and new address to: Rust Consulting, Inc. at the following toll free number: _____.

Exhibit 4

## EXHIBIT 4

### COMPUTATION OF YOUR SETTLEMENT

If your name, address or social security number is different than shown below, please make the necessary corrections on the lines to the right

Name: _____  _____
     (First)      (Middle)      (Last)

_____        _____
     Address                             Address

_____        _____
(City)      (State)      (Zip)       (City)      (State)      (Zip)

Last 4 Digits of Soc. Sec. No.: ____        Social Security Number: _____

_____        _____
     Telephone                           Telephone

During the time period covered by the settlement agreement, CMSC's employment records show that you were employed as an hourly production or support employee in a Covered Job in the _____ Equipment Group at the Schuyler, Nebraska plant between the following dates:

_____ to _____

Based upon this information, your Settlement amounts to _____, less applicable withholding.

Exhibit 5

**EXHIBIT 5**

## NOTICE OF SETTLEMENT AND OPPORTUNITY TO JOIN ACTION

TO:     CARGILL MEAT SOLUTIONS CORPORATION HOURLY PRODUCTION AND SUPPORT
        EMPLOYEES WHO WORK OR HAVE WORKED AT CMSC'S SCHUYLER, NEBRASKA
        PLANT DURING THE TIME PERIOD FROM APRIL 23, 2006 TO FEBRUARY 28, 2011.

RE:     SETTLEMENT OF WAGE CLAIMS AGAINST CARGILL MEAT SOLUTIONS
        CORPORATION FOR DONNING, DOFFING, WALK TIME AND WASHING SAFETY
        EQUIPMENT AND ALL RELATED CLAIMS FOR RELIEF

## I. INTRODUCTION

This Notice is to inform you that Cargill Meat Solutions Corporation ("CMSC") has agreed to settle the wage claim lawsuit that was filed by certain employees at CMSC's Schuyler, Nebraska plant. This Notice explains how your monetary share of the settlement has been calculated, your rights under the settlement, and the steps you must take to participate in the settlement. The settlement amount to which CMSC has agreed you are entitled is set forth in the enclosed form entitled "Computation of Your Settlement."

If you received this Notice in the mail in an envelope addressed to you, a determination has already been made that you have a right to participate in the settlement and you are entitled to receive the back pay amount calculated in the enclosed form entitled "Computation of Your Settlement Share." **IN ORDER TO RECOVER YOUR SHARE OF THE SETTLEMENT PROCEEDS YOU MUST SIGN AND RETURN THE ENCLOSED FORM ENTITLED "CONSENT TO JOIN SUIT AS A PARTY PLAINTIFF AND PARTICIPATE IN THE COURT APPROVED SETTLEMENT." THIS FORM MUST BE COMPLETED AND RETURNED TO THE COURT-APPOINTED CLAIMS ADMINISTRATOR, RUST CONSULTING, INC. ON OR BEFORE           , 2011.**

If you are uncertain whether you are eligible to participate in this settlement, you should contact the Court-appointed Claims Administrator, Rust Consulting, Inc. at the following toll free number: _____..

## II. DESCRIPTION OF THE LAWSUIT

On April 23, 2009, plaintiffs Juan Martinez and Antonio Guzman, on behalf of themselves and all other similarly situated individuals at CMSC's Schuyler, Nebraska plant, filed a lawsuit against CMSC in the United States District Court for the District of Nebraska (Case No. 4:09CV3079). On July 22, 2009, plaintiffs Dale Haferland, Juan Munoz, Karla Velasquez, and Manue Corona, individually and on behalf of all others similarly situated, also filed a lawsuit against CMSC in the United States District Court for the District of Nebraska (Case No. 8:09CV00247). On December 30, 2009, the *Martinez* and *Haferland* cases were consolidated by the Court.

The main claim in this lawsuit is that CMSC violated federal and state law by failing to pay certain employees for the time they spend putting on, taking off and washing safety equipment they are required to wear in performing their job duties, as well as for walk time to and from their work stations after donning their safety equipment.

CMSC has denied and continues to deny that it has violated federal or state wage claim laws in any respect. Furthermore, there has been no court decision of any wrongdoing by CMSC. To avoid

costly, disruptive, and time consuming litigation, and without admitting any wrongdoing, CMSC negotiated and agreed to a settlement of the lawsuit with the plaintiffs' lawyers.

### III.  TERMS OF THE SETTLEMENT AGREEMENT

The Settlement Agreement has been approved by the United States District Court for the District of Nebraska.  Based on the settlement, you are eligible to receive a payment established as part of the Settlement Agreement.  Your payment amount is described in more detail in the enclosed form entitled "Computation of Your Settlement," but this notice will provide you with a more general explanation of how your payment amount was calculated.

Your payment amount was calculated based on the duration of time that you have worked at CMSC's Schuyler, Nebraska plant  and the job you held or now hold.  If you worked in a job that is currently categorized in the **Maximum Equipment Group** for purposes of supplemental pay, you will be paid $6.00 for every full week in which you worked in a Maximum Equipment Group Covered Job during the Relevant Time Period.  If you worked in a job that is currently categorized in the **Minimum Equipment Group** for purposes of supplemental pay you will be paid $4.00 for every full week in which you worked in a Minimum Equipment Group Covered Job during the Relevant Time Period.  If you worked in a job that is currently categorized in the **Standard Equipment Group** and does not receive supplemental pay, you will receive a pro rata share of the unclaimed settlement funds based on the number of full weeks you worked in a Standard Equipment Group Covered Job during the Relevant Time Period, which amount will be determined at a future date.

The Relevant Time Period is April 23, 2006 to February 28, 2011.  If you worked in a Covered Job in the Maximum Equipment Group throughout the Relevant Time Period at the Schuyler plant, you can receive a maximum payment of $_____, less applicable tax withholding.  If you worked in a Covered Job in the Minimum Equipment Group throughout the Relevant Time Period at the Schuyler plant, you can receive a maximum payment of $_____, less applicable tax withholding.  If you worked only a portion of the Relevant Time Period in a Covered Job, then you will receive a pro rata portion of the maximum payment.

### IV.  RIGHTS AND OPTIONS OF ELIGIBLE SETTLEMENT PARTICIPANTS

The enclosed form entitled "Computation of Your Settlement" describes the amount of back pay you may be eligible to receive based upon the amount of time you worked at CMSC in a Covered Job during the Relevant Time Period.  **If you want to be part of the settlement and receive your settlement money, you must sign, date and return the enclosed form entitled  "CONSENT TO JOIN SUIT AS A PARTY PLAINTIFF AND PARTICIPATE IN THE COURT APPROVED SETTLEMENT." This form must be returned to Rust Consulting, Inc. in the enclosed postage-paid envelope no later than _____, 2011.  Please return your form as soon as possible to make sure you are included in the settlement.  If you fail to return this Form, you will not be eligible to receive any money from the settlement nor will you be bound by the settlement's terms.**

### V.  BINDING EFFECT

At the appropriate time, you will be provided with a settlement check in the amount of your respective settlement.  The checks will be in full settlement of any and all known and unknown claims covered by the settlement agreement, and will so state.  State and federal employment taxes, including FICA and FUTA will be withheld from fifty percent of the payment in your settlement check, and you will receive an itemized listing of the deductions.  You should cash your settlement check as soon

possible but in any event in no less than 180 days from when you receive it.  Whether or not you cash the settlement check, the settlement will be binding upon all Settlement Participants.

The parties anticipate that the settlement checks will be distributed on or before _____.

## VI.  ATTORNEY FEES AND COSTS

As part of the Settlement Agreement, CMSC has agreed to pay the plaintiffs' lawyers attorney's fees and litigation costs and this payment has been approved by the United States District Court as fair and reasonable.  This payment does not affect the amount of your individual settlement and you will not pay those lawyers anything out of your individual settlement.

## VII.  FURTHER INFORMATION

If you have any questions about the settlement agreement you may contact:

BRIAN P. MCCAFFERTY
Kenney & McCafferty PC
1787 Sentry Park West
Building 18, Suite 410
Blue Bell, PA 19422
(215) 367-4333

MICHAEL HAMILTON
Provost Umphrey Law Firm, LLP
2021 Richard Jones Road
Suite 300
Nashville, TN 37215
Phone:  (615) 242-0199

ROGER K. DOOLITTLE
460 Briarwood Drive
Suite 500
Jackson, MS 39206-3060
Phone:  (601) 957-9777

ERIC L. YOUNG
BRANDON LAURIA
Egan Young Law Firm
526 Township Line Road, Suite 100
Blue Bell, PA 19422
Phone:  (215) 367-5151

**Do not write or call the Court involved in the lawsuit because, in approving the settlement agreement, the Court has expressed no opinion regarding the merits of plaintiffs' claims or CMSC's defenses to those claims.**

## VIII.  NO RETALIATION OR DISCRIMINATION

Federal law prohibits CMSC from discharging you or in any other manner discriminating against you because you have exercised your right under the federal and state law to participate in this settlement. CMSC also has instructed its managers and supervisors that they are prohibited from engaging in any actions or conduct designed to discourage current or former employees from joining the lawsuit or participating in the settlement proceeds.

## IX.  ADDRESS CHANGES

It is your responsibility to keep the Claims Administrator apprised of your correct mailing address.  Please provide any change of address with your signature, social security number, date of birth, former address, and new address to: Rust Consulting, Inc. at the following toll free number: _____.

3

Exhibit 6

**EXHIBIT 6**

## CONSENT TO JOIN SUIT AS PARTY PLAINTIFF AND
## PARTICIPATE IN THE COURT-APPROVED SETTLEMENT

**TO:**     **CLERK OF COURT AND COUNSEL OF RECORD**

_____ states the following:

     [Print name]

1.     I am at least 18 years of age and competent to give the following consent in this matter.

2.     I am currently or was formerly employed by Cargill Meat Solutions Corporation at its Schuyler, Nebraska meat processing plant.

3.     I understand that a lawsuit has been brought against Cargill Meat Solutions Corporation at the Schuyler plant to recover compensation for pre- and post-production time activities. I understand that this lawsuit was brought pursuant to both federal law and state law.

4.     I understand that the lawsuit referenced in Paragraph 3 above has been settled, and I have been provided with and have reviewed documents entitled "Notice of Settlement" and "Computation of Your Settlement." I hereby consent, agree, and Opt In to be a party plaintiff in the lawsuit, to be represented by plaintiffs' counsel, as described in the "Notice of Settlement and Opportunity to Join Action" form, and to be bound by the terms of any settlement of the case or adjudication by the Court.

     I swear or affirm that the foregoing statements are true to the best of my knowledge, information or belief.


_____     _____

Print Name                                      Signature


_____

Date


**RETURN THIS FORM NO LATER THAN _____, 2011**

**TO:** _____